Jose Antonio HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–95–325–CR.

Court of Appeals of Texas,
Waco.

Jan. 15, 1997.

Rehearing Overruled Feb. 12, 1997.

Rick Davis, Bryan, for appellant.

Bill R. Turner, District Attorney, Stephen Keathley, Margaret Lalk, Assistant District Attorneys, Bryan, for appellee.

Before DAVIS, C.J., and CUMMINGS, and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

A jury convicted appellant, Jose Antonio Hernandez, on October 12, 1995, for offenses committed in April and September 1993. Hernandez was convicted of three counts of delivery of a controlled substance.[1] Punishment was assessed by the trial judge at ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. In nine points of error, Hernandez contends: (1) tape recordings between Hernandez and an undercover narcotics officer were made in violation of the Texas Penal Code and were thereby erroneously admitted into evidence; (2) jury misconduct occurred when one juror translated the audio tapes from Spanish to English during jury deliberations; (3) the trial court erred in denying his objection to misjoinder and motion to sever; (4) and (5) the trial court erred by refusing to strike two venire members for cause; (6) the trial court erred by declining his request for additional preemptory challenges; (7) the evidence is factually insufficient to support the jury's rejection of the

---

1. Hernandez was convicted of delivery of less than four ounces but more than one-fourth ounce of marijuana occurring on April 16, 1993. *See* Act of May 30, 1983, 68th Leg., ch. 425, § 13, 1983 Tex. Gen. Laws 2361, 2387 *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3708 (current version at Tex. Health & Safety Code Ann. § 481.120(b)(3) (Vernon Supp.1997)). He was also convicted of delivery of less than 28 grams of cocaine which also took place on April 16, 1993. *See* Act of May 30, 1983, 68th Leg., ch. 425, § 6, 1983 Tex. Gen. Laws 2361, 2373 *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3705 (current version at Tex. Health & Safety Code Ann. § 481.112(d) (Vernon Supp.1997)). Hernandez's third offense for which he was convicted, delivery of less than five pounds but more than four ounces of marijuana, took place on September 22, 1993. *See* Act of May 30, 1983, 68th Leg., ch. 425, § 13, 1983 Tex. Gen. Laws 2361, 2387 *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3708 (current version at Tex. Health & Safety Code Ann. § 481.120(b)(4) (Vernon Supp.1997)).

defense of entrapment; (8) the evidence is factually insufficient to support the jury's finding of guilt under the law of the parties for delivery of cocaine; and (9) the evidence is legally insufficient to show that, but for his conduct, the crime would not have occurred. We affirm.

## I. FACTUAL BACKGROUND

Officer Ricardo Ledesma, an agent with the Brazos Valley Narcotics Task Force, contacted Hernandez for the first time on April 15, 1993. Acting undercover, Officer Ledesma called Hernandez in order to purchase some marijuana and some cocaine. Officer Ledesma covertly recorded this conversation. During the conversation, Hernandez agreed to make arrangements for Officer Ledesma to purchase the drugs the next day. On April 16, Officer Ledesma, following Hernandez's instructions, traveled to four different locations before the sale of the marijuana and the cocaine was completed. Neither Hernandez nor any of the other men Officer Ledesma dealt with on April 16 were arrested at that time.

The other transaction for which Hernandez was indicted occurred on September 22, 1993. On this date Officer Ledesma contacted Hernandez by telephone, wanting to purchase a pound of marijuana, and again recorded the conversation. During this conversation, Hernandez and Officer Ledesma agreed to meet at a store in Bryan. After arriving at the agreed location in a white El Camino, Hernandez got into Officer Ledesma's vehicle and instructed him to drive to Hernandez's home where Hernandez exited the vehicle and directed Officer Ledesma to follow the El Camino. After purposefully becoming separated from the El Camino so as to alert the surveillance units to the change of plans, Officer Ledesma finally met Rudy Ramirez, the driver of the El Camino, in a deserted parking lot where the sale of the marijuana took place. After the sale was completed and Officer Ledesma and Ramirez left the scene, the surveillance officers stopped and arrested Ramirez. Hernandez was arrested at a later time the same day. From the time Hernandez first approached Officer Ledesma at the original meeting place to the end of the drug sale, Officer Ledesma recorded all the conversations.

Hernandez was charged with and convicted of two counts of delivery of marijuana, one occurring on April 16, 1993 and one occurring on September 22, 1993, and one count of delivery of cocaine which occurred on April 16, 1993. It is from these convictions that Hernandez appeals.

## II. POINTS OF ERROR

### A. Were the Tape Recordings Made by an Undercover Officer Admissible at Trial?

██ In his first point of error, Hernandez contends the tape recordings of the telephone conversations between Officer Ledesma and himself and of the conversations which took place during the September 22 transaction were made in violation of the Texas Penal Code and were therefore erroneously admitted into evidence in contravention of the Code of Criminal Procedure and the United States and Texas Constitutions. U.S. CONST. amend. IV, XIV; TEX. CONST. art. I, § 9; TEX.CRIM. PROC.CODE ANN. art. 38.23(a) (Vernon Supp.1997).

Article 38.23 of the Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CRIM. PROC.CODE ANN. art. 38.23(a). Under the current version of section 16.02 of the Penal Code, it is a second degree felony to unlawfully intercept any wire, oral or written communication. TEX. PENAL CODE ANN. § 16.02(b)(1), (f) (Vernon 1994). Section 16.02 as it is presently written does, however, provide an affirmative defense to prosecution if the person intercepting the communication is a party to the communication and is acting under color of law. *Id.* § 16.02(c)(3). While Hernandez concedes that the affirmative defense under section 16.02(c)(3) applies to Officer Ledesma, he nevertheless maintains that this affirmative defense does not make Officer Ledesma's actions lawful but merely pro-

vides an excuse for his criminal conduct, which still renders the intercepted communications inadmissible under article 38.23(a). Hernandez's argument is based on the current wording of section 16.02.[2] However, at the time of the alleged offenses, section 16.02(b) read, "*[e]xcept* as specifically provided by Subsection (c) of this section, a person commits an offense if he: [ ... ]" (emphasis added).[3] The statute then enumerated eleven exceptions as to when no violation of section 16.02(b) occurred.[4]

The two versions of section 16.02 are distinguishable in that the circumstances which were considered "exceptions" in the previous version are now labeled "affirmative defenses," which in essence merely alters the burden of proof. When a penal statute expressly includes an exception to its violation, the State is required to negate the existence of the exception in the charging instrument and then prove beyond a reasonable doubt that the criminal conduct does not fall within the exception. TEX. PENAL CODE ANN. § 2.02(b) (Vernon 1994). Unlike an exception to an offense, the State bears no burden in regard to an affirmative defense. *Id.* § 2.04(b) (Vernon 1994). The defendant, to avoid criminal responsibility, must prove the affirmative defense by a preponderance of the evidence. *Id.* § 2.04(d). Because the version applicable to the present case contained statutory "exceptions" rather than "affirmative defenses," the rationale of Hernandez's argument is misplaced.[5]

We must now decide if the tape recordings were made in violation of section 16.02(b) as it read in 1993. In Texas, a statute must apply in all cases not expressly excepted. *Garcia v. State,* 829 S.W.2d 796, 800 (Tex.

Crim.App.1992); *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597, 600 (1957). The Amarillo court applied this rule of law to the same version of section 16.02 that is applicable to the present case. *See Kent v. State,* 809 S.W.2d 664, 668 (Tex.App.—Amarillo 1991, pet. ref'd). In *Kent,* the appellant's probation was revoked because he had violated section 16.02(b) of the Penal Code by having a tap placed on his estranged wife's telephone. *Id.* at 667. Despite the appellant's urging, the court refused to add an exception of interspousal wiretapping to section 16.02(b). *Id.* at 667–68. The court opined that "[t]he specification of exceptions makes plain the legislative intent that the statute should apply in all circumstances not excepted." *Id.* at 668. Logically, the converse is also true: where the legislature has expressly defined an exception to the operation of a statute, such exception must apply in all cases where the circumstances fall within it.

In the present case, Officer Ledesma's recording his conversations with Hernandez on each of three different occasions fell within one of the defined exceptions to section 16.02.[6] Former section 16.02(c)(3) reads, "It is an exception to the application of Subsection (b) of this section that a person acting under color of law intercepts a wire, oral, or electronic communication if the person is a party to the communication or if one of the parties to the communication has given prior consent to the interception."[7] When Officer Ledesma made the tape recordings, he was "acting under color of law" and was a party to the conversation. Consequently, the tape recordings were obtained lawfully and were properly admitted into evidence. Hernandez's first point of error is overruled.

---

**2.** The current version of section 16.02 became effective September 1, 1994. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3766. Hernandez was arrested for delivery of a controlled substance in September 1993, a year before the current statute went into effect.

**3.** *See* Act of May 28, 1989, 71st Leg., R.S., ch. 1166, § 16, 1989 Tex. Gen. Laws 4783, 4791–92 *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3608–09. The current version now reads: "A person commits an offense if he:[ ... ]". TEX. PENAL CODE ANN. § 16.02(b) (Vernon 1994).

**4.** *See supra* note 3.

**5.** Our explanation of the differences between the new and old versions of section 16.02 of the Penal Code is to aid in the understanding of Hernandez's argument. We are not to be read as holding that a different result would occur under the current version of the statute.

**6.** *See* Act of May 28, 1989, 71st Leg., R.S., ch. 1166, § 16, 1989 Tex. Gen. Laws 4783, 4791–92.

**7.** *See supra* note 6.

**B. Did Jury Misconduct Occur When a Juror Translated a Tape Recording from Spanish to English During Jury Deliberations?**

██ In his second point Hernandez contends the trial court erred in overruling his motion for new trial based on jury misconduct. Hernandez argues that a juror's translating one of the tape recordings from Spanish to English constituted jury misconduct because it resulted in new evidence being brought into the jury room.

This is a case of first impression in Texas; however, we are not without guidance. The Rules of Appellate Procedure provide that a defendant is entitled to a new trial "where after retiring to deliberate the jury has received other evidence ..." TEX.R.APP. P. 30(b)(7). It is well-settled that a juror may not relate details of the crime scene, learned after deliberations begin, which are not in evidence, *Shivers v. State*, 756 S.W.2d 442, 444 (Tex.App.—Houston [1st Dist.] 1988, no pet.), or his reading of a newspaper article about other crimes committed by the accused. *Reed v. State*, 841 S.W.2d 55, 60 (Tex.App.—El Paso 1992, pet. ref'd). It is also misconduct for a juror to use his own out-of-court knowledge of a witness' reputation to comment on the witness' credibility, *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App. [Panel Op.] 1978), to relate a personal experience, *Cruz v. State*, 838 S.W.2d 682, 687 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), or to interject personal expertise into deliberations. *State v. Scott*, 819 S.W.2d 169, 172 (Tex.App.—Tyler 1991, pet. ref'd).

We find the situation of a juror's translating evidentiary tapes from Spanish to English to be analogous to the above cases where other evidence was put before the jury after deliberations began. We are further persuaded by an opinion regarding a similar set of circumstances from our sister state, California. In *People v. Cabrera*, the court held that a juror's retranslation, during deliberations, of the court-appointed interpret-

er's translation of the defendant's testimony introduced new evidence to the jury and therefore constituted jury misconduct. 230 Cal.App.3d 300, 281 Cal.Rptr. 238, 240 (1991); *but see Bailey v. Tuck*, 591 S.W.2d 605, 609 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) (court held that a juror's translation of special issues from Spanish to English was not analogous to a juror's use of a dictionary in the jury room and was therefore not jury misconduct).

██ The test for determining whether a defendant is entitled to a new trial based on the jury's receiving new evidence after deliberations begin was first articulated in *Stephenson*, 571 S.W.2d at 176. If the defendant can establish that the new evidence was actually received by the jury and adverse to the defendant's case, then the defendant is entitled to a new trial. *See Cruz*, 838 S.W.2d at 687 (citing *Stephenson*, 571 S.W.2d at 176). Whether misconduct occurred is a decision for the trial court, and we will not disturb that ruling absent an abuse of discretion. *See Bratcher v. State*, 771 S.W.2d 175, 188 (Tex.App.—San Antonio 1989, no pet.) (citing *Jones v. State*, 596 S.W.2d 134, 138 (Tex. Crim.App.1980)).

Each time one of the tape recordings of the conversations between Officer Ledesma and Hernandez was offered and admitted into evidence the State provided the jury with a English transcript prepared by Officer Ledesma to use as an aid. The English transcripts themselves were not admitted into evidence and were collected from the jury at the end of each tape's playing. Hernandez did not object to the use of the transcripts. After the jury had been dismissed, Hernandez filed a motion for new trial alleging jury misconduct. He attached to his motion the affidavit of juror Margaret Rosales in which she stated she had translated one of the tape recordings admitted into evidence from Spanish to English during jury deliberations.[8] At the hearing on Hernandez's motion for new trial, Hernandez properly introduced Rosales' affidavit as evi-

---

8. The pertinent statement in Rosales' affidavit attached to Hernandez's motion for new trial stated:

During deliberations, I translated one of the tapes for the other jurors and explained what the words and the conversations meant. I speak Spanish, but it was difficult.

dence of the jury misconduct. The State introduced its own affidavit from Rosales which also stated she had translated one of the tape recordings.[9] It is not disputed that Rosales translated at least one of the tapes for the jury. However, neither of Rosales' affidavits contained even a summary of her translation.

Without such a record, we are unable to determine if Rosales' translation differed at all from the translations that were used at trial without objection. Obviously, if the translations were the same, then Rosales did not bring before the jury evidence that was not admitted at trial. Consequently, because Hernandez failed to provide this court with a sufficient record from which we could determine if the test for jury misconduct resulting from the receipt of new evidence was met, we cannot conclude that the trial court abused its discretion in overruling Hernandez's motion for new trial. *See* TEX.R.APP. P. 50(d) (appellant has the burden to provide a sufficient record requiring reversal). Hernandez's second point is overruled.

## C. Were Hernandez's Offenses Properly Joined in One Trial?

In his third point of error Hernandez contends the trial court erred in overruling his objection to the alleged misjoinder of the offenses and denying his motion to sever. Hernandez argues the offenses for which he was charged were improperly joined in one criminal action because the three drug sales were not part of the same criminal episode.

A person accused of committing an offense defined in the Health & Safety Code may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. TEX. HEALTH & SAFETY CODE ANN. § 481.132(b) (Vernon 1992). The Health & Safety Code defines "criminal episode" as "the commission of two or more offenses

under [chapter 481] under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or (2) the offenses are the repeated commission of the same or similar offenses." *Id.* § 481.132(a).

Hernandez maintains that the April 16 marijuana sale, the April 16 cocaine sale and the September 22 marijuana sale are not part of the same criminal episode because the sales were not part of a common scheme developed by Hernandez but were part of a common plan developed by law enforcement officials. Even though Hernandez cites no authority for the proposition that the *defendant* must have formulated the common scheme, the point is moot. This court has previously held that a trial court does not abuse its discretion in denying a defendant's motion to sever when the offenses joined are the repeated commission of the same or similar offense. *Howard v. State*, 888 S.W.2d 166, 171 (Tex.App.—Waco 1994, pet. ref'd). In *Howard*, the defendant was charged in the same indictment with possession of cocaine on two different occasions. *Id.* at 169. We held, even though the two offenses occurred more than a week apart, they were still part of the same criminal episode in that they were merely repetitious commissions of the same offense. *Id.* at 171.

We find the present case no different than *Howard*. Hernandez was indicted on three separate charges for the exact same type of criminal conduct, to-wit, the delivery of a controlled substance. On each occasion, despite the five-month interval between the April 16 sales and the September 22 sale, Hernandez's role in the sale of the drugs was the same: Hernandez would specify a time and place for the transaction, give Officer Ledesma detailed instructions to follow be-

---

9. The relevant portion of Rosales' affidavit which was attached to the State's opposition to Hernandez's motion for new trial stated:

During jury deliberations, I translated one of the audio tapes for the other jurors. I translated only word-for-word and didn't add any words. I translated such as an actual translator does although I am not certified or do this on a regular basis.

I did not hold myself out to be an expert on context or meaning of the taped conversation. I translated only what was said and did not comment on meanings or [give] my [own] personal viewpoint as to what the translation inferred.

My translation was neutral and I did not add any personal bias as to any meanings of the words or sentences on the tape.

fore the actual sale of the contraband would occur, ascertain the amount of marijuana or cocaine Officer Ledesma wanted, and for two of the sales, set the price Officer Ledesma would pay.[10] Because each of Hernandez's offenses was part of the same criminal episode, the trial court did not abuse its discretion in overruling Hernandez's objection to misjoinder or in denying Hernandez's motion to sever. Hernandez's third point is overruled.

### D. Was Hernandez Entitled to Additional Peremptory Strikes When His Challenge for Cause of Two Venire Members was Denied?

■ In his fourth, fifth and sixth points of error, Hernandez complains the trial court erred by denying him additional peremptory strikes and forcing him to accept objectionable jurors when it refused to strike for cause venire members Barbara Kyle and William Hutto, who allegedly harbored a bias against the defense of entrapment. We need not address the merits of Hernandez's complaints as he has failed to preserve them for our review.

■ To preserve complaints regarding the denial of a challenge for cause, a defendant must show that he: (1) was required to use a peremptory strike on a juror who was challengeable for cause; (2) expended all of his peremptory strikes; (3) was denied his request for additional peremptory strikes; and (4) was forced to accept an objectionable juror. *Hernandez v. State*, 914 S.W.2d 218, 224–25 (Tex.App.—El Paso 1996, pet. ref'd); *see also Dowthitt v. State*, 931 S.W.2d 244, 251 (Tex.Crim.App.1996). The record before us indicates that Hernandez challenged both Barbara Kyle and William Hutto for cause, that his challenges were denied, and that his request for two additional peremptory strikes was denied. Hernandez also asserted on the record that he had to use two of his peremptory strikes on Barbara Kyle and William Hutto and was thereby forced to accept Margaret Rosales and Vonda Bob,

jurors whom he found objectionable. As the El Paso Court did in *Hernandez*, we too find this insufficient to preserve the complaints. *See Hernandez*, 914 S.W.2d at 225. Because Hernandez did not make the jury strike sheets part of the record on appeal and the statement of facts does not otherwise show that Hernandez exhausted all of his peremptory strikes, we find that Hernandez failed to preserve error. Hernandez's fourth, fifth and sixth points are overruled.

### E. Was the Evidence Factually Sufficient to Support the Jury's Rejection of Hernandez's Defense of Entrapment?

■ In point seven, Hernandez maintains the evidence is factually insufficient to support the jury's rejection of the defense of entrapment and urges this court to determine whether "the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong* and *unjust.*" *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996) (emphasis in original). We need *no* urging to apply the *Clewis* standard, as when a factual-insufficiency-point is properly raised by the appellant in regard to a jury finding, we must review the evidence, presented by both the State and the defense, to determine if the jury's verdict was proper. *Jones v. State*, No. 72,026, slip op. at 4, —— S.W.2d ——, 1996 WL 732038 (Tex.Crim. App. December 18, 1996); *Clewis*, 922 S.W.2d at 133, 135.

■ Hernandez seems to suggest that there is a different standard of review for factual sufficiency of a defense to prosecution than there is for a finding of an affirmative defense. We agree with Hernandez that the court on appeal must be cognizant of the level and amount of proof required at trial in conducting a review of the factual sufficiency of the evidence. *Desselles v. State*, 934 S.W.2d 874, 878 (Tex.App.-Waco, 1996, no pet.). In this case, however, the State bore the burden of disproving Hernandez's defense beyond a reasonable doubt. *See Taylor v. State*, 886 S.W.2d 262, 265 (Tex.Crim. App.1994) (the State must prove beyond a reasonable doubt that the defendant was not

---

10. Section 481.132 of the Health & Safety Code does not contain any time frame during which multiple transactions must occur in order to be considered part of the same criminal episode.

*See* Tex. Health & Safety Code Ann. § 481.132 (Vernon 1992); *see also Guidry v. State*, 909 S.W.2d 584, 585 (Tex.App.—Corpus Christi 1995, pet. ref'd).

entrapped). Therefore, Hernandez has presented no justification to depart from the *Clewis* standard. *See Clewis,* 922 S.W.2d at 132.

■ A defendant has the burden of proving, by a preponderance of the evidence, any affirmative defense raised at trial. TEX. PE-NAL CODE ANN. § 2.04; *Clewis,* 922 S.W.2d at 132; *see also Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990). In regard to a defense, once the defendant has made a prima facie showing of the defense, the burden of proof shifts to the State to prove, beyond a reasonable doubt, that the defense is not applicable. TEX. PENAL CODE ANN. § 2.03 (Vernon 1994); *Johnson v. State,* 571 S.W.2d 170, 173 n. 4 (Tex.Crim.App. [Panel Op.] 1978). Consequently, the only difference in a factual sufficiency review of a jury's finding on a defense as opposed to an affirmative defense is in the application of the standard to the proper burden of proof.[11] The proper standard for reviewing the factual sufficiency of a defense is whether the evidence, both for and against the jury's finding, demonstrates that the conviction is clearly wrong and unjust.

The Penal Code provides that entrapment is a defense to prosecution for the conduct charged if the defendant was induced to commit the criminal act by a law enforcement agent. *See* TEX. PENAL CODE ANN. § 8.06(a) (Vernon 1994). However, "conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.* It is axiomatic that once the defendant presents evidence supporting a defense of entrapment, the State is then required to prove beyond a reasonable doubt that the defendant was not entrapped. *See Taylor,* 886 S.W.2d at 265. Consequently, because it is the State's burden to prove that no entrapment occurred, we will review the evidence to determine whether the evidence was sufficient to prove beyond a reasonable doubt that the actions of the law enforcement agents would not have caused a reasonable person to commit the offense. *See England*

*v. State,* 887 S.W.2d 902, 908 (Tex.Crim.App. 1994) (an objective test is used to determine if actions of law enforcement personnel rise to the level of entrapment); *Scott v. State,* 868 S.W.2d 430, 431 (Tex.App.—Waco 1994, pet. ref'd) (same); *see also Clewis,* 922 S.W.2d at 135.

The following evidence was presented at trial: Officer Ledesma testified that he was an undercover agent for the Brazos Valley Narcotics Task Force and that he was introduced to Hernandez by Frank Carpio, a confidential informant, at Carpio's instigation. Officer Ledesma further testified that he called Hernandez on April 15, 1993, in order to buy some marijuana and some cocaine. According to Officer Ledesma, Hernandez readily agreed to find some marijuana for him to purchase but was hesitant to locate any cocaine until Officer Ledesma said he would get the "powder" from someone else. At that time, Hernandez assured Officer Ledesma that he could indeed get the cocaine. Officer Ledesma testified that he and Hernandez agreed to finalize and complete the sale the following day, April 16.

On April 16, Officer Ledesma called Hernandez as instructed. The two agreed to meet at a restaurant in College Station at 1:00 p.m. and that the price for the cocaine would be $250. Once at the restaurant, Hernandez instructed Officer Ledesma to follow him "just down the street." Officer Ledesma followed Hernandez to an apartment complex, where in response to Hernandez's honking his horn, two men, identified as David Hernandez, the appellant's brother, and David DeLeon, came out of one of the apartments. Hernandez inquired as to whether the marijuana had been delivered. When David Hernandez responded negatively, Hernandez directed Officer Ledesma to go with David Hernandez to get the marijuana and then go to Hernandez's house where Hernandez would have the cocaine.

According to Officer Ledesma, Hernandez and David DeLeon left in Hernandez's vehicle, and he and David Hernandez left in

---

11. Following this court's prediction in *Brumbalow v. State,* 933 S.W.2d 298, 300 n. 1 (Tex.App.-Waco 1996, pet. filed), we will review Hernandez's properly raised defense of entrapment, a

defense the State must disprove beyond a reasonable doubt, under *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996).

Officer Ledesma's vehicle. David Hernandez and Officer Ledesma drove to a dirt driveway off Hensarling Lane outside the College Station city limits, where a man, later identified as David Cohenour, gave David Hernandez a bag of marijuana. When Officer Ledesma tried to pay David Hernandez for the marijuana, David Hernandez told him that the money was to be paid to "Joe."

Officer Ledesma and David Hernandez then drove to Hernandez's house as they had been previously instructed. Upon arriving at the house, David Hernandez went to the door, and Officer Ledesma saw Hernandez let his brother in. David Hernandez returned after a brief time with two plastic packets of cocaine. Officer Ledesma gave David Hernandez $225 as payment for the marijuana, but David Hernandez would not count the money until the two drove away from the house. Officer Ledesma, as directed, drove to a convenience store a few blocks away, where he gave David Hernandez $250 for the cocaine. After David Hernandez counted the money, completing the transactions, Officer Ledesma took David Hernandez back to Hernandez's house.

Officer Ledesma testified that he had no further contact with Hernandez until he called Hernandez on September 15, 1993, in order to buy a pound of marijuana. During the telephone conversation, Hernandez agreed to find some marijuana for Officer Ledesma and told Officer Ledesma the price would be $850. A week later, on September 22, Officer Ledesma telephoned Hernandez to finalize the arrangements for the sale. During this telephone conversation, Hernandez and Officer Ledesma agreed to meet at a store in Bryan later that day. Officer Ledesma testified that when he arrived at the store, Hernandez got out of a white El Camino and approached Officer Ledesma. Getting into Officer Ledesma's vehicle, Hernandez instructed Officer Ledesma to drive to Hernandez's house. Upon arriving at Hernandez's house, Hernandez then instructed Officer Ledesma to follow the white El Camino which Officer Ledesma later learned was driven by Rudy Ramirez. After alerting the surveillance units to the change of plans, Officer Ledesma finally made the purchase of the marijuana from Rudy Ramirez in a parking lot. Both Rudy Ramirez and Hernandez were arrested that day.

Hernandez, testifying on his own behalf, stated that when he talked to Officer Ledesma, whom he believed to be Ruben Garcia, on April 15, 1993, he told Officer Ledesma that he could get some marijuana for him and that he knew a person who sold cocaine. He further testified that he met Officer Ledesma at the restaurant in College Station on April 16 and had Officer Ledesma follow him to an apartment complex. Hernandez's account of the events that occurred after he left the apartment complex differs substantially from Officer Ledesma's account. Hernandez testified that he immediately left the complex, stopping at a grocery store before going back to his house. He further testified that soon after he got home, a friend of his brother's, known to Hernandez only as Pacheko, arrived looking for David Hernandez. Hernandez told Pacheko that David Hernandez was not there but that Pacheko could wait for him. Approximately ten minutes later, according to Hernandez, David Hernandez arrived at the house and Hernandez went to the bathroom. Hernandez testified that when he came out of the bathroom thirty minutes later, everyone had gone. Hernandez specifically testified that he never saw Officer Ledesma at that time.

Like Officer Ledesma, Hernandez testified that he had no contact with Officer Ledesma until Officer Ledesma called him on September 15, 1993, wanting to purchase a pound of marijuana. However, Hernandez testified that he told Officer Ledesma that he did not know where to get any marijuana. Hernandez testified that after his telephone conversation with Officer Ledesma, Rudy Ramirez called him and asked if Hernandez knew of anyone wanting to purchase marijuana. Hernandez then testified that Officer Ledesma called him a week later on September 22, and Hernandez made arrangements for Officer Ledesma to meet him at a store in Bryan later that day to purchase the requested marijuana. Hernandez admitted to meeting Officer Ledesma at the store and to instructing Officer Ledesma to follow Rudy Ramirez in order to make the purchase.

On cross-examination, Hernandez admitted to arranging a meeting between his brother, David Hernandez, and Officer Ledesma on April 16 and that he knew the purpose was for Officer Ledesma to purchase marijuana. He also admitted to setting up a meeting between Rudy Ramirez and Officer Ledesma on September 22 for the sole purpose of Officer Ledesma's purchasing a pound of marijuana. Hernandez contends that Officer Ledesma's repeated calls to him and his continual "hounding" was entrapment, and had it not been for Officer Ledesma's actions, Hernandez would not have made the arrangements for the drug sales.

The State maintains that there was insufficient evidence adduced at trial to support Hernandez's defense of entrapment. The State argues that Officer Ledesma merely provided Hernandez with an opportunity to sell illegal drugs and that Officer Ledesma did not induce Hernandez to do so.

In conducting a factual-sufficiency review of the evidence, due deference must be given the jury's assessment of the witnesses' credibility and their resolution of any conflicts in the evidence. *Jones*, slip op. at 4–5, —— S.W.2d at ——–——, 1996 WL 732038; *Clewis*, 922 S.W.2d at 133; *Desselles*, 934 S.W.2d at 878; *Lawson v. State*, 927 S.W.2d 314, 315 (Tex.App.—Houston [1st Dist.] 1996, no pet.). These are the prerogatives of the jury as a fact-finding body, and we, as a reviewing court may not preempt that role unless the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Jones*, slip op. at 4–5, —— S.W.2d at ——–——; *Clewis*, 922 S.W.2d at 135.

The jury found that Hernandez was guilty on all three counts of delivery of a controlled substance and rejected his theory of entrapment. Officer Ledesma testified that he was introduced to Hernandez by Frank Carpio at Carpio's instigation and that he did no more than ask Hernandez to sell him specified amounts of marijuana and a specified amount of cocaine. Hernandez admitted that the sole reason for his arranging for Officer Ledesma to meet David Hernandez on April 16 and Rudy Ramirez on September 22 was for Officer Ledesma to purchase drugs. The evidence presented at trial is consistent with the State's theory that Officer Ledesma merely afforded Hernandez an opportunity to commit the offense. Consequently, having reviewed all the evidence, we find that the jury's rejection of Hernandez's entrapment defense is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Hernandez's seventh point of error is overruled.

### F. Was the Evidence Factually Sufficient to Support the Jury's Finding that Hernandez was Guilty of Delivery of Cocaine under the Law of the Parties?

■ In point eight, Hernandez argues that the evidence is factually insufficient to support his conviction for Count II, delivery of cocaine. Specifically, Hernandez contends that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of delivery of cocaine under the law of the parties. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Once again, we will reverse the jury's finding only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 135. The Penal Code provides that "[a] person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2).

As stated above, Officer Ledesma testified that despite Hernandez's initial hesitance to sell cocaine, Hernandez did assure Officer Ledesma that he could get the cocaine for him. Further, according to Officer Ledesma, Hernandez set the price for the cocaine at $250 during their telephone conversation on April 16. Officer Ledesma's testimony also showed that it was Hernandez who instructed him to go to Hernandez's house where Hernandez would have the cocaine. Furthermore, Officer Ledesma testified that, when he arrived at Hernandez's house, he saw Hernandez inside the house and only minutes later David Hernandez came out of the house and handed Officer Ledesma two plastic packets of cocaine. During his testi-

mony, Hernandez admitted to knowing someone who sold cocaine and to arranging for Officer Ledesma to meet such person.

After reviewing the evidence, we cannot conclude that the jury's verdict convicting Hernandez of delivery of cocaine under the law of the parties is so against the overwhelming weight of the evidence as to be manifestly unjust. *See Bates v. State,* 843 S.W.2d 101, 105–06 (Tex.App.-Texarkana 1992, no pet.) (held, in a pre-*Clewis* opinion, that the evidence, even viewed without the prism of "in the light most favorable to the prosecution," was factually sufficient to support a conviction under the law of the parties where the appellant directed the undercover officer to the location of the drugs and handed the drugs to his brother to give to the undercover officer). Hernandez's eighth point is overruled.

### G. Was the Evidence Legally Sufficient to Support the Jury's Finding that "But For" Hernandez's Actions the Offense Would Not Have Occurred?

In his ninth point of error, Hernandez argues the evidence is merely insufficient, without specifying factually or legally, to support his conviction because the evidence does not prove beyond a reasonable doubt that, but for his conduct, the offense would not have occurred. TEX. PENAL CODE ANN. § 6.04(a) (Vernon 1994).[12] Under the standard of review for legal sufficiency, we must "consider all the record evidence in the light most favorable to the jury's verdict, and [ ] determine whether, based on that evidence and all reasonable inferences therefrom, any rational jury could have found the defendant guilty beyond a reasonable doubt." *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex. Crim.App.1995); *see also Jackson v. Virginia,* 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

"A person is criminally responsible if the result would not have occurred but for his

conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a). Hernandez argues that Officer Ledesma's actions were a concurrent cause and but for Officer Ledesma's "persistent" calling and *his* arranging the transactions, no offense would have occurred. However, the Court of Criminal Appeals has held that a defendant may be exonerated under section 6.04 "only if the concurrent cause was clearly sufficient, operating alone, to produce the result and the accused's conduct alone was clearly insufficient to do so." *McFarland v. State,* 928 S.W.2d 482, 516 (Tex.Crim.App. 1996) (citing *Felder v. State,* 848 S.W.2d 85, 90 n. 1 (Tex.Crim.App.1992)).

In undertaking a review of the legal sufficiency of the evidence, we consider only the evidence supporting the trial court's judgment, keeping in mind that the jury, not appellate judges, are the fact-finders, and we "may not reevaluate the weight and credibility of the record evidence." *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *Jones,* slip op. at 3, —— S.W.2d at ——; *Alvarado,* 912 S.W.2d at 207. As the evidence outlined above indicates, the offenses for which Hernandez was charged, three counts of delivery of controlled substances to Officer Ledesma, would not have occurred had Hernandez not been willing to locate the marijuana and the cocaine for Officer Ledesma. Consequently, based on the evidence presented at trial, a rational jury could have found beyond a reasonable doubt that, but for Hernandez's actions, the offenses would not have occurred. Because we find the evidence legally sufficient to support Hernandez's conviction, his ninth point is overruled.

The judgment is affirmed.

---

12. In *Clewis,* the Court of Criminal Appeals expressly stated that courts of appeals, in addition to reviewing the sufficiency of the evidence under a legally sufficient standard, also have the authority to review the factual sufficiency of the evidence provided the point is properly presented on appeal. 922 S.W.2d at 132–34. Because Hernandez failed to specifically request a review of the factual sufficiency of the evidence, we will limit our review to whether the evidence was legally sufficient to support the jury's finding that but for Hernandez's conduct the offense would not have occurred.