NO. 07-01-0434-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 15, 2002
_____

ANTONE RICHIE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 180TH DISTRICT COURT OF HARRIS COUNTY;

NO. 857,643; HON. LARRY FULLER, PRESIDING
_____

Before QUINN, REAVIS, and JOHNSON, J.J.

Antone Richie (appellant) appeals his conviction for delivering a controlled substance, namely cocaine. The three issues presented on appeal involve his claim of entrapment. That is, he first contends that the trial court erred in refusing to grant his motion to dismiss the prosecution because it was established, pre-trial and as a matter of law, that he was entrapped. Also asserted are the propositions that the jury's implicit finding that he was not entrapped enjoyed neither legally nor factually sufficient evidentiary

support. Because the contentions are intertwined, we consider them together, overrule each, and affirm the judgment.

### *Authority*

According to statute, it is a defense to prosecution "that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." TEX. PENAL CODE ANN. §8.06(a) (Vernon 1994). However, "[c]onduct merely affording a person an opportunity to commit an offense does not" fall within that category. *Id.* Furthermore, this defense, commonly known as entrapment, can be determined at trial by the factfinder (assuming evidence exists to support its submission), Texas Penal Code Ann. §2.03(c), or via a pretrial hearing. *Taylor v. State*, 886 S.W.2d 262, 265 (Tex. Crim. App. 1994). And, irrespective of the setting in which it is addressed, the State generally has the burden to disprove its existence beyond reasonable doubt. *Id.*

Yet, the duty of the State to satisfy its burden does not ripen until the defendant produces evidence sufficient to raise the defense. *Id.*; *See Russell v. State*, 904 S.W.2d 191, 197 (Tex. App.–Amarillo 1995, pet. ref'd) (stating that because entrapment is a defense to prosecution, the initial burden of producing evidence to raise it is on the defendant while the burden of persuasion to disprove it remains with the State). Moreover, the evidence must illustrate not only that the defendant was induced to act as he did but also that the conduct inducing him to so act "was such as to induce an ordinarily law-abiding person or average resistance." *England v. State*, 887 S.W.2d 902, 913 (Tex. Crim.

2

App. 1994); *Freeman v. State*, 998 S.W.2d 379, 382 (Tex. App.–Texarkana 1999, pet. dism'd).

Finally, if the defense is addressed via a pretrial hearing, the trial court sitting as the fact-finder is entitled to weigh the evidence and from the circumstances draw a legal conclusion as to whether the accused was entrapped. *Taylor v. State*, 886 S.W.2d at 265. And, to the extent that it may weigh the evidence, its resolution of conflicts in that evidence is entitled to deference. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (holding that the trial court's general construction of historical fact is entitled to deference). Similarly, if the issue is presented at trial to a jury, the latter's interpretation of the evidence and resolution of conflicts therein is also entitled to deference. *See Liggins v. State*, 979 S.W.2d 56, 63 (Tex. App.–Waco 1998, pet. ref'd) (stating that the reviewing court must give "due deference to the jury's assessment of the credibility of the witnesses and the weight to be given their testimony" when addressing a claim of entrapment); *Hernandez v. State*, 938 S.W.2d 503, 512 (Tex. App.–Waco 1997, pet. ref'd) (stating the same).

### *Application of Authority*

As a result of the pretrial evidentiary hearing convened to address appellant's motion to dismiss "based on entrapment," the trial court had before it the following evidence. Officer Maxwell approached appellant (who was standing outside a convenience store) and asked if he (appellant) "'had seen Charles'." Appellant responded by asking "'Charles who?'" "'Black Charles,'" said Maxwell. Appellant then stated that he did not know "Black Charles" but nonetheless asked "'what do you want with'" him. At that

3

point, the officer said that the individual "'hooks me up, I'm just trying to get a twenty.'"[1] Then, appellant "told [Maxwell] that he could go take [him] to get 20 dollars worth of crack" on "Broadway." Maxwell agreed to appellant's proposal and the two entered Maxwell's car and drove to an apartment complex as per appellant's directions. When they arrived, appellant told the officer that money was needed, and Maxwell gave him $20. Appellant then "walked between two buildings," returned "a few minutes later" and handed the officer "a rock of cocaine." The two departed the scene in the car, at which time the officer "gave a bust signal" which resulted in the arrest of appellant.

Appellant did not deny purchasing the crack cocaine for the officer. Instead, he claimed he did so in exchange for payment and a ride to a local hospital because he had hurt his hand earlier in the day and was in pain. That was the supposed reason appellant was at the convenience store; he was purportedly waiting for a ride from a friend to the hospital. Furthermore, Maxwell's advances regarding the acquisition of a controlled substance were initially rebuffed, according to appellant. Allegedly, appellant did not acquiesce until he was offered money and a ride to the hospital. Furthermore, according to appellant, Officer Maxwell, as opposed to appellant, suggested the location at which the contraband could be acquired.

Needless to say, Maxwell denied that appellant informed him he was injured or that a ride to the hospital would be provided if appellant bought him cocaine. So too did Maxwell deny the statement that he, Maxwell, suggested the location at which the contraband could be bought.

---

[1]According to Maxwell, a "twenty" was "a slang term for $20 worth of crack cocaine."

As fact-finder at the pretrial hearing, the trial court was entitled to credit the testimony of Maxwell. *Taylor v. State*, *supra*. Furthermore, Maxwell indicated that while he approached appellant, inquired into the whereabouts of "Black Charles," and mentioned that he was "trying to get a twenty," it was appellant who volunteered to acquired it for him. In other words, Maxwell effectively testified that appellant volunteered to acquire the substance even though Maxwell had not asked him to do so. To the extent that an officer's simply asking an individual to buy a certain quantity of drugs does not constitute entrapment, *see Hernandez v. State*, 938 S.W.2d at 512 (wherein the officer testified that "he did no more than ask Hernandez to sell him specified amounts of marijuana and . . . cocaine" and the court held that the "evidence presented at trial [was] consistent with the State's theory that Officer Ledesma merely afforded Hernandez an opportunity to commit the offense" which was not entrapment), volunteering to buy drugs for a law enforcement officer before being asked to do so certainly cannot be entrapment. Simply put, mentioning to another one's desire to purchase contraband is not inducement sufficient to overcome the will of an ordinary law-abiding person with average resistance. Thus, because the trial court had before it some evidence negating the contention that appellant was entrapped, it did not err in denying his motion to dismiss.

Similarly, we do not find that the jury rendered an improper verdict since it ultimately convicted appellant. This is so because evidence virtually identical to that described above was offered and admitted at trial. Thus, it too was faced with resolving credibility issues and conflicts in the testimony. Nothing required it to believe appellant's version of the facts. Being the fact-finder, it was well within its prerogative to credit the officer. And,

5

if it decided to believe the officer, it had some evidence upon which to rationally conclude, beyond reasonable doubt, that appellant was not induced to act by conduct sufficient to overcome the will of an ordinary law-abiding person of average resistence. Thus, the verdict did not lack the support of legally sufficient evidence.

Nor did the verdict lack the support of factually sufficient evidence. This is so because while there is evidence to contradict Maxwell's testimony, that evidence was not so overwhelming as to render the verdict *clearly wrong* or *manifestly unjust*, as required by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) and its progeny. To reiterate, the jury was free not only to resolve credibility issues but also to do so as it did.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Justice


Do not publish.