In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00023-CR


______________________________




BILLY JOE CARMON, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Delta County, Texas


Trial Court No. 6671




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 In six cases in which he was charged with sexual assault of a child, Billy Joe Carmon, Jr.,
pled guilty and elected to have a jury assess his punishment. The jury recommended sentences of
ten years' imprisonment in each case. (1) After the State requested that the sentences be "stacked," the
trial court ordered the sentences in five of the cases to run concurrently and one to run consecutive
to those sentences. (2)

 We affirm Carmon's conviction and sentence because the sentence cumulation order is valid.

 Carmon alleges the trial court's cumulation order was error. Carmon cites one case for this
argument, Baker v. State. (3) That case does not apply.

 Unless an exception applies, the Texas Penal Code provides that, when a defendant is
convicted of more than one offense arising out of the same criminal episode and the cases are pled
or tried together in a single criminal action, a sentence must be pronounced for each offense and the
sentences must run concurrently. See Tex. Penal Code Ann. § 3.03(a) (Vernon Supp. 2006). But,
where the defendant is convicted of violating one of a few enumerated statutes, notably including
Section 22.011 of the Texas Penal Code--criminalizing sexual assault--the trial court may order
the sentences to run either concurrently or consecutively. (4) Finding that none of the exceptions found
in the statute applied, the appellate court in Baker held that the trial court had erred in ordering
Baker's sentences to run consecutively. Baker, 107 S.W.3d at 673. 

 Carmon's situation is markedly different. Carmon was found guilty in all six cases of sexual
assault of a child. Sexual assault of a child is addressed by Section 22.011(a)(2) of the Texas Penal
Code. The indictments, although alleging offense dates from June 1, 2003, to March 1, 2005, all
allege the same victim, pseudonymed "Courage." As used in Section 3.03 of the Texas Penal Code,
a "single criminal action" refers to a single trial or plea proceeding; as such, a defendant is
prosecuted in a "single criminal action" when allegations and evidence of more than one offense
arising out of the same criminal episode are presented in a single trial or plea proceeding. Malone
v. State, 163 S.W.3d 785, 804 (Tex. App.--Texarkana 2005, pet. ref'd). "Criminal episode" includes
"the repeated commission of the same or similar offenses." Tex. Penal Code Ann. § 3.01(2)
(Vernon Supp. 2006). (5) Carmon's convictions are clearly subject to the provisions of Section 3.03
and susceptible to cumulation. We overrule Carmon's first point of error.

 Carmon attempts to set out two other points of error, also complaining of the cumulative
sentencing. But, in each case, he fails to set out anything other than a mere conclusory argument. 
As such, we must overrule his other two points of error.

 Carmon's second point of error complains the trial court's cumulation order somehow
deprived Carmon of due process of law. Here, Carmon describes the interchange between the State
and the trial court after receiving the jury's verdicts, which recommended a sentence of ten years on
each charge. Carmon claims on appeal this was error, as the trial court's order "gave the defendant
a different verdict than the jury intended, and also took away the defendant[']s rights [sic] to have
a jury set his punishment." Carmon provides no analysis or authority to support his claims. We find
this point to be inadequately briefed and overrule it. See Tex. R. App. P. 38.1(h); Vuong v. State, 830
S.W.2d 929, 940 (Tex. Crim. App. 1992). (6)

 Carmon's third, and final, point of error claims the trial court's cumulation order "took away
from the Defendant the right to have a jury set his punishment and gave that right to the desires of
the prosecutor." (7) Carmon does not explain how--when the State asked the trial court to cumulate
the sentences and the trial court did that with one of the charges--such a situation amounted to "the
prosecution . . . determin[ing] who will pass sentence on a defendant." The only case cited in this
section of Carmon's brief is Narvaiz v. State, 840 S.W.2d 415 (Tex. Crim. App. 1992) (en banc). 
Without providing us a pinpoint cite, Carmon cites Narvaiz generally for the proposition that "[i]f
the facts show the proceeding is a criminal action based on charges arising out of the same criminal
episode, the trial court may not order consecutive sentences." Narvaiz was sentenced to death for
capital murder: killing his ex-girlfriend and three of her siblings in a single transaction. See id. at
419. From our reading of Narvaiz, that case involves only one sentence and there is no mention of
"stacking" or ordering sentences to run consecutively. The only areas of Narvaiz we find applicable
are the court's overruling of several points of error as inadequately briefed. Id. at 429, 431, 433.


 We overrule this point of error as inadequately briefed, and affirm the trial court's judgment
and sentence.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 29, 2007

Date Decided: January 30, 2007


Do Not Publish
1. Trial court numbers 6675 and 6676 (our cause numbers 06-06-00027-CR and 06-06-00028-CR) each contained two counts of sexual assault of a child, with a sentence of ten years'
imprisonment received for each count.
2. The trial court ordered the sentence in trial court number 6671 (our cause number 06-06-00023-CR) to run consecutive with sentences imposed in trial court numbers 6672, 6673, 6674,
6675, and 6676 (our cause numbers 06-06-00024-CR, 06-06-00025-CR, 06-06-00026-CR, 06-06-00027-CR, 06-06-00028-CR, respectively). 
3. 107 S.W.3d 671 (Tex. App.--San Antonio 2003, no pet.).
4. Section 3.03 reads as follows:

 

 If the accused is found guilty of more than one offense arising out of the same
criminal episode, the sentences may run concurrently or consecutively if each
sentence is for a conviction of . . . an offense . . . under Section 21.11 [indecency with
a child], 22.011 [sexual assault], 22.021 [aggravated sexual assault], 25.02
[prohibited sexual conduct], or 43.25 [sexual performance by a child] committed
against a victim younger than 17 years of age at the time of the commission of the
offense regardless of whether the accused is convicted of violations of the same
section more than once or is convicted of violations of more than one section.


Tex. Penal Code Ann. § 3.03(b)(2)(A) (Vernon Supp. 2006).
5. Passages of time do not preclude multiple offenses from being a single criminal episode. 
See Hernandez v. State, 938 S.W.2d 503, 508-09 (Tex. App.--Waco 1997, pet. ref'd) (April 16
cocaine sale and September 22 marihuana sale merely repetitious commissions of same offense);
Guidry v. State, 909 S.W.2d 584, 585 (Tex. App.--Corpus Christi 1995, pet. ref'd) (Section 3.01(2)
of Texas Penal Code does not impose time differential between commission of same or similar
offenses).
6. Further, the "discretionary decision whether to cumulate individual sentences no more
violates due process than does the decision, by judge or jury, of what particular sentence to impose
within the statutorily prescribed range of punishment." Barrow v. State, No. PD-0194-05, 2006 Tex.
Crim. App. LEXIS 2230, at *11 (Tex. Crim. App. Nov. 15, 2006). "The Legislature was not
required to provide the option to cumulate sentences at all. That the Legislature did so provide, but
then reserved the cumulation aspect of punishment for the judge rather than the jury, does not change
its essentially normative, non-fact-bound character." Id. at *12.
7. Carmon also contends, "[i]t is the right of any defendant under the laws of the United States
and the State of Texas to choose who will set his punishment in a criminal trial." This is not correct:
"It is well established that the constitutional right to a jury trial does not encompass the right to have
the jury assess punishment. Texas is one of the few states that allow defendants the privilege, by
statute, of opting for jury assessment of punishment." Barrow, 2006 Tex. Crim. App. LEXIS 2230,
at *7 (citations omitted).



rights?


 Mr. Williams: No.


 THE COURT: Well, let me ask you this. You know that there's a jury
waiting to try this case?

 

 Mr. Williams: Yes, sir.


 THE COURT: And you know that that jury would be called upon to consider
whether or not you're guilty or innocent of the indicted charges; do you understand
that?


 Mr. Williams: Yes, sir.


 THE COURT: Do you know that by agreeing to this, you're telling me you
don't want a jury to consider whether or not you're guilty or innocent. In fact, you
want to just simply plead guilty to the lesser included offense and have the others,
what we call taken into consideration and dismissed.


 Mr. Williams: Yes, sir.


 THE COURT: Is that what you want to happen?


 Mr. Williams: Yes, sir.


 THE COURT: Okay. And you understand that nobody can make you waive
that jury?


 Mr. Williams: I didn't think they did.


 THE COURT: Okay. You have to give it up.


 Mr. Williams: I did give it up.


 THE COURT: And are you giving it up voluntarily?


 Mr. Williams: Yes, sir.


 THE COURT: Are you doing so of your own free will?


 Mr. Williams: Yes.

 

 THE COURT: Is anybody forcing you to do this or making you do is [sic]?


 Mr. Williams: Well, I didn't actually do no deadly weapon to them boys,
that's the reason.


 THE COURT: It's a deadly conduct, not a deadly weapon.


 Mr. Williams. Yes, sir, I understand that.


 THE COURT: Okay. Has anybody forced you to do this?


 Mr. Williams: No.


 THE COURT: Made you do it?


 Mr. Williams: No, sir.


 THE COURT: I mean, is this what you want to do?


 Mr. Williams: Yes, sir.


 THE COURT: Do you understand -- well, okay, sir. Sir, to the charge, the
lesser included offense of deadly conduct, in Cause No. 14,513, sir how do you
plea[d], guilty or not guilty?


 Mr. Williams: Guilty.


 THE COURT: And are you pleading guilty because you are guilty and for no
other reason?


 Mr. Williams. Right.


 THE COURT: Is that a yes?


 Mr. Williams: Yes.


 THE COURT: Has anybody forced you into pleading guilty, made you plead
guilty?


 Mr. Williams: No.


 THE COURT: Talked you into it?


 Mr. Williams: No.


 In addition to these oral warnings, Williams and his attorney signed an agreed plea
recommendation form. It is specifically noted in the agreement that the plea is an "open plea." 
Williams acknowledged that he and his attorney had read the document, that Williams understood
it, and that he was freely, voluntarily, and intelligently entering the plea of guilty. The agreement
contains a judicial confession and a waiver of a jury trial. The document confirms the agreement as
presented orally to the trial court (charge reduced to deadly conduct, punishment range was two to
ten years and $10,000.00 fine, another case considered, no recommendation as to punishment). 
Williams was admonished both orally and in writing; either method complied with Texas law. See
Tex. Code Crim. Proc. Ann. art. 26.13(d). 

 The record in this case shows Williams' guilty plea was accepted only after the trial court
made certain Williams' guilty plea was free and voluntary rather than the product of coercion by or
force from an outside influence. Several weeks later, and now again on appeal, Williams claimed
that his August guilty plea was involuntary and should not have been accepted by the trial court. 
However, the record of the plea proceeding does not support the conclusion that the trial court was
accepting an involuntary guilty plea at the time Williams entered his plea.

II. Withdrawal of Guilty Plea

 Williams also contends the trial court erred by denying his motion to withdraw his guilty
plea. Once a trial court has accepted a defendant's guilty plea and taken the issue of sentencing under
advisement, an accused's guilty plea may be withdrawn only if the trial court, acting within its
discretion, permits such withdrawal. Labib v. State, 239 S.W.3d 322, 331 (Tex. App.--Houston [1st
Dist.] 2007, no pet.).

 In this case, the trial court accepted Williams' plea August 14, 2007. The court then ordered
the preparation of a presentence investigation (PSI) report, took the issue of punishment under
advisement, and continued the case until September 17 for sentencing. At that September sentencing
hearing, Williams expressed his desire to withdraw his guilty plea. The trial court took no action
on Williams' plea withdrawal motion; instead, the court continued the case until September 19. 
When the hearing resumed, the trial court formally denied Williams' motion to withdraw his guilty
plea and assessed his punishment at eight years' imprisonment. 

 Later, at a hearing on his motion for new trial, Williams testified he had believed the
negotiated plea agreement called for a charge reduction and a sentence of community supervision. 
He held this (mistaken) belief despite acknowledging that the trial court had specifically warned him
that the plea agreement called for an "open plea." 

 Trial judges have a solemn obligation to every defendant who comes before their courts to
ensure that those accused of criminal wrongdoing appear before a fair, just, and impartial tribunal. 
But trial judges also have the duty to the public to operate their courts in an efficient manner. 
Neither fairness nor efficiency may be accomplished if parties are permitted to engage in a protracted
series of seemingly unwarranted delays. 

 The record shows that this case had been previously continued by the defense on numerous
occasions. For the week beginning Monday, August 13, 2007, the trial court had specially set aside
the entire week to try only Williams' case, time that could have been devoted to other pressing
matters. Yet, when voir dire had been scheduled to begin that Tuesday (and with a jury waiting in
the wings), Williams tried to (a) fire his court-appointed counsel, (b) obtain a continuance, and
(c) seek permission from the trial court to hire new counsel (which was also denied based on the trial
court's observation that Williams had been claiming for over a year that he was making efforts to hire
new counsel but had never done so). The trial court then took a brief recess to permit Williams to
discuss his impending trial with his attorney and to discuss a potential plea agreement with the
prosecutor. 

 After this recess, the State and Williams informed the trial court that the parties had reached
a negotiated plea agreement calling for Williams to plead guilty to the lesser included offense of
deadly conduct and submit the issue of punishment to the trial court's discretion. The paperwork
about the guilty plea clearly stated the issue of punishment was "open" to the discretion of the trial
court. 

 During the plea hearing, the trial court provided Williams with multiple opportunities to
withdraw his guilty plea, to claim that he did not understand the ramifications of his plea, and/or to
seek additional explanations from his lawyer about the substance of the plea process. Williams took
advantage of none of these opportunities. Thus, confident that Williams' plea was voluntary, the trial
court accepted the plea, took the matter of punishment under advisement, and continued the case so
that the PSI report could be prepared.

 Yet, once the date arrived for formal sentencing, Williams was unwilling to accept the
consequences of his guilty plea; instead, he wanted to start the process over anew. The trial court
could have reasonably interpreted these actions as gamesmanship, requiring further delay. 

 Additionally, and in stark contrast to Williams' claims at the September sentencing hearing,
Williams' earlier responses at the August plea hearing had clearly supported the belief that Williams
understood the terms and consequences of his plea agreement, that his jury waiver was intelligent
and voluntary, that Williams knew "there was no going back" once his plea was accepted by the trial
court, and that Williams affirmatively knew his punishment would be assessed solely by the trial
court. The trial court might have reasonably viewed this sudden change of heart with a great degree
of skepticism regarding the depth of Williams' sincerity.

 Given these various considerations, and given the wide range of discretion available to the
trial court in deciding whether an accused should be permitted to withdraw his or her guilty plea, we
cannot say the trial court's ruling fell outside the wide zone of reasonable disagreement.

Conclusion

 Finding no error in the proceedings below, we affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: August 11, 2008

Date Decided: August 13, 2008


Publish
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.