# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-24-00774-CR
NO. 03-24-00775-CR
NO. 03-24-00776-CR
NO. 03-24-00781-CR

---

**Joe Angel Morales, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NOS. CR2023-623B, CR2023-624B, CR2024-068B, & CR2024-069B,**
**THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING**

---

# **O P I N I O N**

The State charged appellant Joe Angel Morales with three counts of possession of a controlled substance, methamphetamine, with intent to deliver (the chapter 481 offenses) and one count of attempted tampering with physical evidence; the offenses were charged in separate indictments. *See* Tex. Penal Code §§ 15.01(a), 37.09(a); Tex. Health & Safety Code § 481.112(a). Morales entered open guilty pleas, which the trial court accepted, to each of the charges.

Each indictment for a chapter 481 offense included four enhancement paragraphs, alleging prior felony convictions, to which Morales pleaded true. *See* Tex. Penal Code § 12.42(d). The attempted tampering indictment included three such enhancement paragraphs as well as a "§ 12.35(c) Enhancement Paragraph," alleging that he had previously been convicted of a felony

in which he used or exhibited a deadly weapon, namely, aggravated assault with a deadly weapon. *See id.* § 12.35(c)(2)(B); Tex. Code Crim. Proc. art. 42A.054(c). Morales pleaded true to all four enhancement paragraphs alleged in the attempted-tampering indictment. Following a hearing on punishment, the trial court sentenced Morales—enhanced to habitual-offender status—to forty years' confinement for each offense and ordered that all four sentences run consecutively for a total sentence of 160 years.

On appeal, Morales contends that the trial court erred by ordering the sentences for the chapter 481 offenses to run consecutively to each other, by enhancing his punishment for attempted tampering under both subsections 12.35(c) and 12.42(d), and by stacking[1] his sentence for attempted tampering with the sentences for the chapter 481 offenses. We agree that the sentences for the three chapter 481 offenses must run concurrently and modify Morales's judgments of conviction accordingly. We affirm the judgments as modified.

**BACKGROUND**

The sole recitation of the facts underlying the charges in these cases is contained in offense reports that were admitted without objection as exhibits during Morales's plea hearing. Two of the chapter 481 offenses (trial court cause numbers CR2024-068B and CR2024-069B) involved controlled drug buys on May 23, 2023, and July 5, 2023, in which Morales sold meth— approximately 57 grams and 151 grams, respectively—to undercover officers. The third offense (trial court cause number CR2023-623B) involved the discovery on July 19, 2023, of drugs on Morales's person and in his residence while officers were executing warrants. Specifically,

---

[1] The terms "stacking" and "cumulation" are used synonymously to refer to orders that sentences run consecutively. *See, e.g., Strickland v. State*, 707 S.W.3d 221, 226 (Tex. Crim. App. 2024) (using both terms interchangeably).

2

officers found 113 grams of a white crystalline substance consistent with meth in his pocket and recovered from his trailer home 195 grams of meth, 9.5 grams of cocaine, four bottles of alprazolam (Xanax), 158 grams of marijuana, fourteen e-cigarette THC-extract cartridges, two digital scales, sandwich bags, and $1,149.[2]

The attempted-tampering charge (trial court cause number CR2023-624B) arose from the June 28, 2022 traffic stop of a vehicle in which Morales was a backseat passenger. The car was being driven by Crystal Gomez, described by officers as a "listed . . . drug user," but was owned by Miranda Martinez, another passenger. While searching the vehicle, officers observed a "bottle of green pills" near the center console, noticed "a ripped off corner of a plastic bag" in a seam of the seat where Morales had been sitting, and discovered a torn baggie containing "a white powder substance" inside a soda can in the seat's cupholder. Although the substance field-tested positive for cocaine, Morales admitted to having put alprazolam in the can, and laboratory testing confirmed the presence of alprazolam (.35 grams remained in the bag, but it was unclear how much had been diluted into the soda). Officers subsequently found $200 on Morales's person. Martinez told one officer that the soda belonged to Morales, who had become "really upset" during the traffic stop and begun "cursing at Crystal for getting stopped."

The plea agreements in all four cases were substantively identical. In particular, each admonished Morales that as a habitual offender, he faced a punishment range of imprisonment "for Life or for any term of not more than 99 years or less than 25 years." Each stated that "no promises or agreements outside of those established in this written document" had

---

[2] All of the listed drug quantities are approximations.

been made. Each contained a list of rights—not including the right to concurrent sentencing—waived by Morales. And each provided that he and the State agreed:

> **This is an open plea of guilty and true to the enhancement paragraphs of the indictment. The Defendant agrees that he shall not ask for or receive a deferred adjudication. Therefore, he shall be sentenced to a term of confinement not less than 25 years nor more than 99 years or life in the Institutional Division of the Texas Department of Criminal Justice. The Defendant also understands that the Court may, in its discretion, order that the sentences in each of his pending cases be cumulated and run consecutively to each other.**

The agreements were signed by Morales, his attorney, and the State and were accepted by the trial court.

When describing the agreements' terms during the plea hearing, the State's attorney informed the trial court, "And, because they are separate offenses, the sentences can run concurrently or consecutively in the [c]ourt's discretion. That's all set out in those papers." The court agreed, and Morales confirmed that he understood the terms. The following exchange occurred concerning the rights waived by Morales:

THE COURT: And, finally, before we finalize this, you do understand that, by signing these documents, you waive certain rights that you're entitled to like your Right to Remain Silent, your Right Against Self Incrimination, your Right to Confront your Accusers and your Right to a Trial by a Jury, correct?

DEFENDANT: Yes, ma'am.

THE COURT: And you're still waiving all of those rights?

DEFENDANT: Yes, ma'am.

4

At the conclusion of the punishment hearing around two months later, the trial court sentenced Morales "to 40 years as to each case" and ordered that "they are going to be stacked. They're going to be consecutive." This appeal followed.

## DISCUSSION

### I. The Cumulation of Morales's Sentences

#### A. Waiver

Before reaching the merits of Morales's challenge to the cumulation of his sentences, we must first consider the State's argument that he has waived his first and third issues on appeal. The State argues that he "agreed with the State—as part of a plea agreement—that the [t]rial [c]ourt may order his sentences to run consecutively" and that in consideration, the State consented to his waiver of his right to a jury trial. The State asserts that the waiver of Morales's right to concurrent sentencing is evidenced by the language in the agreements that he "understands that the [c]ourt may, in its discretion, order that the sentences in each of his pending cases be cumulated and run consecutively to each other" and by his expressing an understanding during the plea hearing that his sentences were subject to being stacked. Morales responds that the agreements did not "contain a specific and sufficient waiver as to the right to concurrent sentencing" and that the transcript of the plea hearing "contains nothing to indicate a knowing and intelligent waiver of the right to concurrent sentencing."

It is important at the outset to briefly sketch the statutory scheme for consecutive sentencing. Article 42.08 of the Code of Criminal Procedure confers a trial court's general authority to cumulate sentences, providing that when a defendant is convicted in two or more cases,

5

"judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction" and that, subject to exceptions not applicable in these cases,

> in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly.

Tex. Code Crim. Proc. art. 42.08(a).

When the sentences are for offenses arising out of the same criminal episode and tried in a single criminal action, this general authority is limited by Penal Code subsection 3.03(a) and Health and Safety Code subsection 481.132(d), the latter statute applying exclusively to narcotics offenses under the Controlled Substances Act. *See* Tex. Penal Code § 3.03(a); Tex. Health & Safety Code § 481.132(d). The two subsections are "virtually identical." *Rollins v. State*, 994 S.W.2d 429, 431 n.4 (Tex. App.—Beaumont 1999, no pet.).

Both subsection 3.03(a) and subsection 481.132(d) provide that sentences that arise from the same criminal episode and are tried together "shall run concurrently." *See* Tex. Penal Code § 3.03(a); Tex. Health & Safety Code § 481.132(d).[3] "Criminal episode" is likewise defined similarly in each code. For purposes of subsection 3.03(a), "criminal episode" means

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:

---

[3] Like article 42.08, subsection 3.03(a) is subject to exceptions inapplicable to the present cases. *See* Tex. Penal Code § 3.03(b)–(e).

6

(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or

(2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code § 3.01. Under subsection 481.132(a), "criminal episode"

means the commission of two or more offenses under this chapter under the following circumstances:

(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or

(2) the offenses are the repeated commission of the same or similar offenses.

Tex. Health & Safety Code § 481.132(a).

A defendant may waive some rights as "part of a more global plea agreement based on consideration other than an agreed punishment recommendation." *Jones v. State*, 488 S.W.3d 801, 808 (Tex. Crim. App. 2016) (in which defendant waived his right of appeal in exchange for "the substantial benefit of the State abandoning one of the two enhancements," thereby altering punishment range). Under the right circumstances, the State's consent to a defendant's waiver of a jury trial can provide the necessary consideration. *See Ex parte Broadway*, 301 S.W.3d 694, 698 (Tex. Crim. App. 2009). To be valid, a waiver must be made voluntarily, knowingly, and intelligently. *Carson v. State*, 559 S.W.3d 489, 493 (Tex. Crim. App. 2018). In determining whether the waiver of a right pursuant to a plea agreement is valid, we look to the written agreement—applying general contract-law principles to determine its intended content—as well

as to the formal record. *See Jones*, 488 S.W.3d at 805 (citing *Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013)).

We agree with Morales that the record in these cases does not reflect a knowing and intelligent waiver of the right to concurrent sentencing under either subsection 3.03(a) or subsection 481.132(d). The language in the plea agreements—which tracked the general-authority provision in article 42.08—at most demonstrates that he understood the trial court to have discretion to stack his sentences. Whether the parties and trial court believed that article 42.08 controlled, and thus understood the language as effectively boilerplate, or whether they intended the language to be included as an express term of the plea agreements in contravention of the rights in subsections 3.03(a) and 481.132(a) is unclear from the record. What is clear is that the agreements are silent as to any right to concurrent sentencing and equally silent as to the waiver of such a right. A defendant's expression of an understanding that the trial court has discretion to cumulate his sentences is not a knowing and intelligent waiver of the right to concurrent sentencing if the defendant is unaware of the right's existence or is unaware that his expression of the understanding signifies a surrender of the right.

The inference that Morales did not knowingly and intelligently waive his right to concurrent sentencing is further supported by the right's omission from the list of waived rights in the plea agreements. The list of eight rights included such weighty rights as the right to a jury trial, the right to remain silent, the right to confront and cross-examine witnesses, and the right to appeal the findings of his guilt. The right to concurrent sentencing is notably missing, and the agreements elsewhere provide that "[t]here are no promises or agreements outside of those established in this written document." Similarly, when the trial court enumerated during the plea hearing the rights that Morales was waiving by signing the plea agreements, it did not include the

right to concurrent sentencing. Although the court confirmed his understanding that his sentences could run consecutively, the colloquy suffered from the same infirmity as the language discussed above, namely, it omitted any mention that he had a right to the contrary and was relinquishing it as part of his agreement with the State.

Accordingly, we conclude that Morales did not knowingly or intelligently waive his right to concurrent sentencing as part the plea agreements and that he is not for that reason prohibited from challenging the trial court's cumulation order on appeal. *See Carson*, 559 S.W.3d at 493; *see also Ervin v. State*, 991 S.W.2d 804, 818 n.1 (Tex. Crim. App. 1999) (Meyers, J., dissenting) (declining to find waiver because record did not show that defendant "affirmatively accepted, as part of his plea bargain, the relinquishment of a statutory provision or right"); *cf. Prall v. State*, No. 03-24-00379-CR, 2025 WL 2404393, at *2 (Tex. App.—Austin Aug. 20, 2025, no pet.) (mem. op., not designated for publication) (concluding that defendant's "decisions voluntarily, knowingly, and intelligently to accept the plea bargain and waive any right to appeal from the trial court's cumulation order at the time that he was placed on community supervision 'must work as a forfeiture of the claim'" (quoting *Wiley v. State*, 410 S.W.3d 313, 321 (Tex. Crim. App. 2013))).

Moreover, there is no evidence in the record that the State offered consideration for a waiver of Morales's right to concurrent sentencing. The State correctly notes that its consent to a defendant's waiver of a jury trial may create a bargain, *see Broadway*, 301 S.W.3d at 697–98 (explaining that trial court found that State did not want to consent to defendant's waiver of jury trial, but defendant—who wanted to ensure trial judge would be able to consider deferred-adjudication community supervision—induced State to consent by waiving his right to appeal), but fails to recognize that for the State's consent to constitute consideration, there must

9

be some evidence in the record that the consent was bargained for and that the State wanted to proceed to trial but was induced to forego one by the purported waiver, *see Carson*, 559 S.W.3d at 496 (stating that "[c]onsent to proceed to a bench trial . . . by itself is not sufficient to qualify as consideration" and that "the record must show that the State gave up its right to a jury in exchange for the defendant's waiver"); *Nichols v. State*, 349 S.W.3d 612, 615 (Tex. App.—Texarkana 2011, pet. ref'd) (declining to find waiver because record contained "no evidence the State did not want to consent to the jury waiver or that the defendant and State negotiated the State's agreement to waive the jury trial").

The State at no point evinced a desire to try these cases before a jury, and the record is silent as to any agreement between the State and Morales that its consent to waive a jury trial resulted from the waiver of his right to concurrent sentencing. While the agreements recite that Morales requested the State's "consent and approval" for the waiver of a jury trial, the sole reference to the consideration it would receive in exchange concerns Morales's express waiver of "any and all right to appeal as to the guilt or innocence phase of [his] trial including all matters raised by written motions filed prior to trial." Thus, the record shows that the parties bargained for Morales to give up his right to appeal his guilt in exchange for the State's consent but not for a waiver of his right to concurrent sentencing. *Cf. Thomas v. State*, 615 S.W.3d 552, 564 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("[T]he record reflects that [defendant] and the State negotiated for both parties to give up their right to a jury trial in exchange for [defendant]'s guilty plea—not for her waiver of her right to appeal.").

For these reasons, we conclude that Morales did not waive his right to appeal the trial court's cumulation order in these cases.[4]

**B.      Standard of Review**

We review a trial court's decision to cumulate a defendant's sentences for an abuse of discretion. *See* Tex. Code Crim. Proc. art. 42.08(a); *Byrd v. State*, 499 S.W.3d 443, 446–47 (Tex. Crim. App. 2016). The trial court's decision is "'a normative, discretionary function that does not turn on discrete findings of fact.'" *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008) (quoting *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006)). Consequently, "when a trial judge lawfully exercises the option to cumulate, that decision is unassailable on appeal." *Id.*; *see Smith v. State*, 575 S.W.2d 41, 41 (Tex. Crim. App. 1979) ("Normally, the trial judge has absolute discretion to cumulate sentences."). It follows that as a practical matter, an abuse of discretion in the context of cumulation of a defendant's sentences will be found only if the trial court imposes consecutive sentences where the law requires concurrent sentences or where the court otherwise fails to observe the statutory requirements pertaining to sentencing. *See Byrd*, 499 S.W.3d at 446–47; *Revels v. State*, 334 S.W.3d 46, 54 (Tex. App.—Dallas 2008, no pet.); *see also Beedy*, 250 S.W.3d at 110 ("In some cases, the trial judge is required to cumulate individual punishment, while in other cases, the trial judge's decision to cumulate is discretionary.").

---

[4] We disagree with the State that we should be guided by *Collins v. State*, in which our sister court concluded that Collins had waived his right to complain of his stacked sentences. *See* Nos. 09-05-00333-CR, 09-05-00334-CR, & 09-05-00335-CR, 2006 WL 2439622, at *2 (Tex. App.—Beaumont Aug. 23, 2006, no pet.) (mem. op., not designated for publication). First, the opinion in *Collins* omits any discussion of whether Collins had been informed that he had the right to concurrent sentencing. *See id.* at *1–3. Second, Collins explicitly agreed to the trial court modifying the terms of his plea agreement by resetting his sentencing date (to allow him to attend the birth of his child) in exchange for the likely cumulation of his sentences if he failed to attend the rescheduled sentencing hearing. *See id.*

**C.    Whether the Trial Court Erred by Ordering Morales's Sentences for the Chapter 481 Offenses to Run Consecutively**

Having determined that Morales did not waive his right to concurrent sentencing, we must next consider whether he enjoyed the right under subsection 481.132(d) such that the trial court erred by cumulating his sentences in trial court cause numbers CR2024-068B, CR2024-069B, and CR2023-623B—involving offenses under the Health and Safety Code.  In his first issue, he contends that the trial court erred by cumulating his sentences for the chapter 481 offenses because the offenses arose out of the same criminal episode and were tried in a single criminal action.  *See* Tex. Health & Safety Code § 481.132(d).

The State concedes that "if *arguendo* [Morales] did not waive his right to concurrent sentencing, his drug offenses would run concurrently under § 481.132(d)."  We agree.  The requirement of a single criminal action was plainly satisfied because Morales pleaded guilty to all three offenses at a single plea hearing.  *See LaPorte v. State*, 840 S.W.2d 412, 414 (Tex. Crim. App. 1992), *overruled on other grounds by Ex parte Carter*, 521 S.W.3d 344, 347 (Tex. Crim. App. 2017) ("[I]t is clear the Legislature intended 'a single criminal action' to refer to a single trial or plea proceeding.").  And as mentioned above, a "criminal episode" for purposes of subsection 481.132(a) includes the repeated commission of "the same or similar" chapter 481 offenses.  Tex. Health & Safety Code § 481.132(a)(2).

Each of the offenses in question was a violation of section 481.112 of the Health and Safety Code and resulted from Morales's possession of large quantities of meth (ranging from fifty-seven grams to over 300 grams) with intent to deliver.  *See Green v. State*, 242 S.W.3d 215, 219–20 (Tex. App.—Beaumont 2007, no pet.) (concluding that because defendant's offenses were "both possession of controlled substance offenses, . . . the legislature intended them to be

12

considered as similar offenses," and they therefore "ar[o]se out of the same 'criminal episode'"); *Vallez v. State*, 21 S.W.3d 778, 783 (Tex. App.—San Antonio 2000, pet. ref'd) ("Vallez's offenses are for delivery and possession of controlled substances. We conclude that these are the same or similar offenses, and the State does not argue to the contrary."); *Hernandez v. State*, 938 S.W.2d 503, 508–09 (Tex. App.—Waco 1997, pet. ref'd) (stating that each of three charges for delivery of controlled substance during controlled buys was "part of the same criminal episode"). Moreover, although there is no temporal requirement under the substantively identical definition of "criminal episode" in Penal Code subsection 3.01(2), *Crowell v. State*, 642 S.W.3d 885, 894–95 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (listing cases), Morales's offenses occurred over a period of only two months, *see Hernandez*, 938 S.W.2d at 508 (noting that "[o]n each occasion, despite the five-month interval between the April 16 sales and the September 22 sale, Hernandez's role in the sale of the drugs was the same").

Because the offenses for which Morales was convicted in trial court cause numbers CR2024-068B, CR2024-069B, and CR2023-623B arose from the same criminal episode and were prosecuted in a single criminal action, his sentences for those offenses were required to run concurrently. *See* Tex. Health & Safety Code § 481.132(d). Accordingly, the trial court abused its discretion by ordering his sentences in the three chapter 481 cases to run consecutively to each other. *See Byrd*, 499 S.W.3d at 446–47 ("A trial court abuses its discretion if it imposes consecutive sentences where the law requires concurrent sentences."). We sustain his first issue.

13

**D.** **Whether the Trial Court Erred by Ordering Morales's Sentence for Attempted Tampering to Run Consecutively to His Sentences for the Chapter 481 Offenses**

In his third issue, Morales contends that the trial court also erred by "cumulating the tampering with evidence charge as it is not permissible as a matter of law." He argues that because the attempted-tampering offense was "based on [his] conduct involving a controlled substance which was in his possession," the offense arose from the same criminal episode as the three chapter 481 offenses. Specifically, he asserts:

> If [he] had been charged with possession in addition to attempted tampering this would not be a question . . . . a [sentence for a] fourth charge for possession of a controlled substance would run concurrently with [the sentences for the chapter 481 offenses]. As a tampering charge would run concurrently with a theoretical possession charge which would mandatorily run concurrently with the other three counts in this cause—it would not be possible for the tampering charge to be cumulated with one of the other causes here.

The State responds that neither subsection 481.132(d) nor subsection 3.03(a) requires a trial court to order that the sentence for a single Penal Code offense run concurrently with the sentences for chapter 481 offenses. The State alternatively argues that, if subsection 3.03(a) applies, the attempted-tampering offense did not arise out of the same criminal episode as the chapter 481 offenses.

Like the definition in subsection 481.132(a), section 3.01 defines "criminal episode" as

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> > (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or

14

(2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code § 3.01.

As an initial matter and in what appears to be an issue of first impression, we disagree with the State about the applicability of subsection 3.03(a) to offenses codified outside of the Penal Code. Although the State is correct that subsection 481.132(a) limits the cumulation of sentences under subsection 481.132(d) to sentences imposed for "two or more offenses *under this chapter*," *see* Tex. Health & Safety Code § 481.132(a) (emphasis added); *Williams v. State*, 253 S.W.3d 673, 677–78 (Tex. Crim. App. 2008) ("The 'chapter' that this subsection refers to is Chapter 481, the Texas Controlled Substances Act."), there is no such limitation for the cumulation of sentences under chapter 3 of the Penal Code, *see generally* Tex. Penal Code §§ 3.01–.04.[5] In fact, section 3.01 and subsection 3.03(a) are not merely free of similar limiting language; by virtue of subsection 1.03(b) of the Penal Code, they expressly apply to offenses codified outside of that code, including to offenses in the Health and Safety Code.[6] *See* Tex. Penal Code § 1.03(b) (providing in relevant part that "[t]he provisions of Titles 1, 2, and 3[7] [of the Penal Code] apply to offenses defined by other laws, unless the statute defining the offense provides otherwise"); *White v. State*, 509 S.W.3d 307, 312 & n.7 (Tex. Crim. App. 2017) (recognizing that subsection 1.03(b) applies to chapter 481 offenses). Thus, subsection 3.03(a) requires the imposition of concurrent

---

[5] Formerly, subsection 3.01(2) was limited to offenses defined in Title 7 of the Penal Code. *See* Act of June 17, 1987, 70th Leg., R.S., ch. 387, § 1, 1987 Tex. Gen. Laws 1900 (amending language to current form). We understand this amendment as further evidence that the Legislature intended subsection 3.03(a) to apply to offenses outside of the Penal Code.

[6] The State on appeal does not discuss the effect of subsection 1.03(b).

[7] Subsection 3.03(a) falls under Title 1 of the Penal Code.

15

sentences so long as the offenses for which they are imposed arise out of the same criminal episode—as that term is defined in section 3.01—and are tried or pleaded-to together, regardless of the codes in which the offenses are found. *See Carraway v. State*, Nos. 13-21-00086-CR, 13-21-00087-CR, 2022 WL 619135, at *3–4 (Tex. App.—Corpus Christi–Edinburg Mar. 3, 2022, no pet.) (mem. op., not designated for publication) (concluding that because defendant was convicted of two chapter 481 offenses that arose from same criminal episode, "§§ 3.03(a) and 481.132(d) controlled and mandated an imposition of concurrent sentences"); *Jackson v. State*, 157 S.W.3d 514, 515–16 (Tex. App.—Texarkana 2005, no pet.) (determining, where defendant was convicted on two charges of delivery of controlled substance, that both "Section 3.03 of the Texas Penal Code and Section 481.132(d) of the Texas Health and Safety Code apply"). *But see Rollins*, 994 S.W.2d at 430 ("Since delivery of marihuana is an offense under the Texas Health & Safety Code, the 'multiple prosecutions' statute in Chapter 481, rather than the one contained in chapter three of the Texas Penal Code, is the governing statute.").

However, although cumulation of Morales's sentences was not precluded because the offenses for which they were imposed are located in different codes, we agree with the State that the attempted-tampering offense did not arise out of the same criminal episode under either definition of that term in section 3.01.

We first consider whether the attempted-tampering offense and chapter 481 offenses were "committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan." *See* Tex. Penal Code § 3.01(1). Despite the fact that Morales pleaded guilty to attempting to tamper with alprazolam, a controlled substance, there is little evidence in the record suggesting that the attempted tampering occurred as part or in furtherance of his drug dealing. *See* Tex. Health & Safety Code

16

§ 481.104(a)(2) (designating alprazolam as Penalty Group 2 controlled substance). The traffic stop occurred around a year before the chapter 481 offenses, and a trial court may consider the time between offenses when determining whether they arose from a single criminal episode under subsection 3.01(1), unlike subsection 3.01(2). *Compare In re T.D.N.*, 620 S.W.3d 433, 438–39 (Tex. App.—El Paso 2020, no pet.) (noting that defendant's argument that offenses were "committed some thirteen years apart and involved different victims . . . address[ed] the first method set forth in subsection (1)"), *with Guidry v. State*, 909 S.W.2d 584, 585 (Tex. App.—Corpus Christi–Edinburg 1995, pet. ref'd) (explaining that subsection 3.01(2) "does not impose a time differential between the commission of the same or similar offenses"). The amount of alprazolam was significantly less than the amounts of meth detailed in the offense reports for the chapter 481 offenses, two of which resulted from controlled buys and the third of which involved substantial evidence of intent to deliver, such as large quantities of multiple drugs, sandwich baggies, digital scales, and over $1,000. Although the drugs found in Morales's residence included four bottles of alprazolam, it is unclear from the record exactly how much alprazolam he possessed during the traffic stop; the amount was small enough to fit inside a single baggie, but the baggie was torn and its contents were diluted into the soda. Thus, it is just as reasonable to infer that the alprazolam was for personal use as it is to infer that it was intended for delivery.

Moreover, the $200 found on Morales's person following the traffic stop was much smaller than the "large amounts of cash"—like the $1,149 found in his residence—indicative of an intent to deliver drugs. *See, e.g.*, *Branch v. State*, 599 S.W.2d 324, 325 (Tex. Crim. App. 1979) ($8,000); *Hughitt v. State*, 539 S.W.3d 531, 535 (Tex. App.—Eastland 2018) ($786), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) ($600); *Branch v. State*, 833 S.W.2d 242, 244 (Tex. App.—

17

Dallas 1992, pet. ref'd) ($732).  In addition to the relatively small amount of drugs and cash, other factors contraindicating an intent to deliver included the absence of any evidence that the traffic stop occurred in a suspicious or high-crime area, of drug paraphernalia tied to Morales, and of a manner of packaging suggesting he intended to deliver the alprazolam.  *See Williams*, 902 S.W.2d at 507–08 (listing factors showing intent to deliver and characterizing defendant's possession of "a number of small plastic bags of the sort used to package smaller rocks of cocaine for sale" as circumstantial evidence of his intent to deliver).

Finally, the attempted-tampering offense and chapter 481 offenses lack the sort of nexus present in cases in which courts of appeals have concluded that a common scheme or plan existed.  *See, e.g.*, *Adams v. State*, No. 07-22-00200-CR, 2023 WL 4056063, at *5 (Tex. App.—Amarillo June 16, 2023, no pet.) (mem. op., not designated for publication) (determining that murder and tampering were part of same criminal episode where defendant, after murdering victim, put her body in luggage and disposed of it in apartment's dumpsters); *Baker v. State*, 107 S.W.3d 671, 673 (Tex. App.—San Antonio 2003, no pet.) (concluding that three offenses arose from one criminal episode, although they involved different victims and occurred over period of eleven months, because "[e]ach offense was directed at a woman living on or near Hope's Ferry, occurred in or near her home while she was alone, and took place in the early morning hours" as part of "a continuing course of sexual assault of women living near Hope's Ferry"); *Hyder v. State*, Nos. 05-98-01721-CR & 05-98-01781-CR, 2000 WL 688258, at *2 (Tex. App.—Dallas May 24, 2000, pet. ref'd) (not designated for publication) (explaining that aggravated robberies and aggravated assaults arose out of same criminal episode because they "occurred over a short period of time as part of a continuous and unbroken chain of events" and because defendant "committed aggravated assault to deter the victims of the aggravated robberies from following

him"); *Moffatt v. State*, 930 S.W.2d 823, 829 (Tex. App.—Corpus Christi–Edinburg 1996, no pet.) (concluding that charges of forgery, possession of stolen property, theft, and tampering with vehicle identification numbers (VIN) were committed pursuant to common scheme or plan where defendant and his wife claimed to own stolen pickup trucks and altered their VINs, and trucks' titles were discovered to be forged).

The relationship between the present cases is instead more akin to the relationship in *Garza v. State*, in which the defendant was charged with possession of marijuana and assault, alleged to have occurred on or about the same date; rejecting the argument that the offenses were connected by a common scheme or plan, our sister court posited, "Garza may simply have been in possession of marijuana when he was arrested for the assault. This would not make the offenses part of the same transaction or connect them by a common scheme or plan." 37 S.W.3d 130, 133 (Tex. App.—San Antonio 2001, no pet.).

Accordingly, on this record, the trial court did not abuse its discretion by finding that the attempted-tampering offense and chapter 481 offenses were not committed pursuant to the same transaction or to two or more transactions that were connected or constituted a common scheme or plan. *See* Tex. Penal Code § 3.01(1); *Byrd*, 499 S.W.3d at 446–47; *Revels*, 334 S.W.3d at 54.

Next, we consider whether attempted tampering and possession of a controlled substance with intent to deliver are "the same or similar offenses" under subsection 3.01(2). *See* Tex. Penal Code § 3.02(2). While offenses need not be factually identical under subsection 3.01(2), *Cazarez v. State*, 606 S.W.3d 549, 563 (Tex. App.—Houston [1st Dist.] 2020, no pet.), the statute is generally applicable when the State charges identical or nearly identical statutory offenses, *see Middleton v. State*, 634 S.W.3d 46, 49 (Tex. Crim. App. 2021) ("Because all of

19

[defendant]'s offenses were thefts, they constituted the repeated commission of the same or similar offenses under the statute."); *Baker*, 107 S.W.3d at 673 ("[B]ecause all three offenses entailed sexual assault or attempted sexual assault, they are similar offenses."); *Hernandez*, 938 S.W.2d at 508 ("Hernandez was indicted on three separate charges for the exact same type of criminal conduct, to-wit, the delivery of a controlled substance.").

Alternatively, courts have sometimes looked to whether the offenses in question share a common gravamen. *See Lopez v. State*, 108 S.W.3d 293, 298–99 (Tex. Crim. App. 2003); *see also T.D.N.*, 620 S.W.3d at 440 (defining "similar" as "'having characteristics in common: very much alike: comparable . . . alike in substance or essentials: corresponding'" and reasoning that "[o]ne way to determine whether two offenses are 'alike in substance or essentials,' is to compare the elements of the two offenses to see if they share a common 'gravamen,' or in other words, whether the 'gist' or 'essence' of the two offenses is the same" (quoting *Similar*, Webster's Third New International Dictionary (2002))). The gravamen of possession with intent to deliver is "[to prevent] the distribution of dangerous drugs in our society" and is "driven by the particular quantity of a particular contraband substance." *Lopez*, 108 S.W.3d at 298–300. In contrast, the gravamen of tampering with physical evidence is "to maintain the honesty, integrity, and reliability of the justice system and prohibiting *anyone*—including members of the government—from creating, destroying, forging, altering, or otherwise tampering with evidence that may be used in an official investigation or judicial proceeding." *Wilson v. State*, 311 S.W.3d 452, 460 (Tex. Crim. App. 2010); *cf. Arnold v. State*, 68 S.W.3d 93, 99 (Tex. App.—Dallas 2001, pet. ref'd) (identifying gravamen of witness-tampering statute as "insur[ing] the sanctity of our courts and our criminal justice process"). Clearly, the gist or essence of attempted tampering and possession of a controlled substance with intent to deliver is dissimilar.

Morales on appeal asserts that the State *could* have elected to charge him with possession of a controlled substance after the traffic stop, in which case that hypothetical charge would have been sufficiently similar to the other chapter 481 offenses that the four offenses would have arisen from the same criminal episode. *See Vallez*, 21 S.W.3d at 783 (concluding that "delivery and possession of controlled substances . . . are the same or similar offenses"). However, he was not indicted for possession of the alprazolam, and he offers no authority for determining that two offenses arise from the same criminal episode if the conduct underlying one of the offenses might have been charged as a different offense. We decline to adopt such a broad reading of subsection 3.01(2), which refers to "the same or similar *offenses*," not conduct. *See* Tex. Penal Code § 3.01(2) (emphasis added).

For these reasons, we conclude that the trial court did not abuse its discretion by finding that attempted tampering and possession of a controlled substance with intent to deliver are not the same or similar offenses under subsection 3.01(2). *See Byrd*, 499 S.W.3d at 446–47; *Revels*, 334 S.W.3d at 54; *see also DeWitt-Etheredge v. State*, Nos. 07-24-00333-CR & 07-24-00334-CR, 2025 WL 2014933, at *2 (Tex. App.—Amarillo July 17, 2025, no pet.) (mem. op., not designated for publication) ("Tampering with evidence and possession of a controlled substance are not the same or similar offenses."). Because the trial court did not abuse its discretion by finding that all four of Morales's offenses did not arise from the same criminal episode, it was not required to order that his sentence for attempted tampering and his sentences for the chapter 481 offenses run concurrently but had absolute discretion over the decision whether to cumulate them. *See* Tex. Penal Code § 3.03(a); *Byrd*, 499 S.W.3d at 446; *Smith*, 575 S.W.2d at 41. We overrule Morales's third issue.

## E. The Relief to Which Morales Is Entitled

Having determined that the trial court erred in part of its cumulation order, we must decide on the appropriate remedy.

Initially, we note that in his brief, Morales cites *LaPorte* for the proposition that "[a]n improper cumulation order is a void sentence." *See LaPorte*, 840 S.W.2d at 415 ("An improper cumulation order is, in essence, a void sentence."). As the State correctly recognizes, however, this holding of *LaPorte* has since been overruled. *See Carter*, 521 S.W.3d at 347 ("In a bare improper-cumulation order context, the infirmity lies in the order setting how the sentences will be served, not in the assessed sentences themselves. Labeling as void sentences falling within the statutorily prescribed range of punishment is inaccurate."); *Beedy*, 250 S.W.3d at 114 ("An individual sentence assessed by a trial judge within the applicable range of punishment is not rendered illegal by the entry of an unlawful cumulation order.").

Morales also cites *Beedy* to argue that we should reform the trial court's judgments by deleting the entire cumulation order. *See* 250 S.W.3d at 110 ("[W]hen a trial judge unlawfully enters a cumulation order in a case that did not involve a negotiated plea agreement, the appellate court, according to our precedent, will reform the judgment by deleting the order."). The State responds that because the possibility of consecutive sentencing was specifically bargained for as part of Morales's negotiated plea bargains, we should instead return the parties to their positions before the trial court accepted his pleas if we will not specifically enforce the plea agreements. Alternatively, the State argues that we should conclude that there was no "meeting of the minds" between the parties with respect to the plea bargains and that they were therefore not binding.

We conclude that neither of the parties' positions is proper. We first address the State's argument that there were negotiated plea bargains in these cases, the violation of the terms

22

of which requires that we remand for a new trial. The State is correct that when parties enter into a plea bargain, and the terms of the bargain are not kept, "the proper relief is either specific performance of the agreement, if it can be enforced, or withdrawal of the plea if it cannot." *Perkins v. Court of Appeals for Third Supreme Jud. Dist.*, 738 S.W.2d 276, 283–84 (Tex. Crim. App. 1987). That relief is justified because "'[a]t its core, a plea bargain is a contract between the state and the defendant.'" *Thomas v. State*, 516 S.W.3d 498, 501 (Tex. Crim. App. 2017) (quoting *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009)). For that reason, we apply contract-law principles when interpreting plea bargains. *Ex parte Moussazadeh,* 64 S.W.3d 404, 411 (Tex. Crim. App. 2001), *rev'd on reconsideration sub. nom. Ex parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012).

However, there were no plea bargains in these cases. Although a plea bargain does not require the parties' agreement on a specific punishment, all plea bargains must in some way affect the defendant's sentence. *See Scott v. State*, 690 S.W.2d 256, 258 (Tex. Crim. App. 1985). "There are two basic types of plea bargains—sentence bargains and charge bargains." *Thomas*, 516 S.W.3d at 502. Both types impact a defendant's punishment. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003). Sentence-bargaining involves a binding or non-binding recommendation from the State as to the sentence, including a "cap" on the available punishment or a recommendation that a defendant be placed on deferred-adjudication probation; charge-bargaining "involves questions of whether a defendant will plead guilty to the offense that has been alleged or to a lesser or related offense, and of whether the prosecutor will dismiss, or refrain from bringing, other charges." *Id.* Consequently, plea-bargaining amounts to a defendant's relinquishment of his right to go to trial in exchange for a reduction in charge and/or sentence. *Perkins*, 738 S.W.2d at 282.

23

Unlike a plea-bargain defendant, Morales in these cases entered open guilty pleas to the offenses originally charged in the indictments; he was subject to the full range of punishment for each offense and ineligible for deferred adjudication, and the State neither made a sentencing recommendation nor charging decision in exchange for his pleas. Because Morales did not enter negotiated pleas pursuant to plea bargains, we need not decide between specific performance or the withdrawal of his pleas; nor do we need to evaluate the agreements for a "meeting of the minds" between the parties. *See Beedy*, 250 S.W.3d at 110. The cases cited by the State, which both involved plea bargains, are thus distinguishable. *See Thomas*, 516 S.W.3d at 500 (stating that parties "negotiated a charge-bargain agreement" in which "[t]he State agreed to reduce the engaging in organized crime charge to the lesser-included offense of state-jail felony theft in exchange for [defendant]'s plea of guilty to the lesser offense and his plea of true to the enhancements"); *Shannon v. State*, 708 S.W.2d 850, 851 (Tex. Crim. App. 1986) (explaining that it was "undisputed that [defendant] agreed to plead guilty in exchange for the State's agreement to recommend reduction of the charge to possession of over 400 grams of diazepam and to recommend two years confinement").

Although Morales directs us to *Beedy* in asking that we delete the full cumulation order, that case is inapposite because it involved a cumulation order that was unlawful *in toto*. The trial court stacked Beedy's ten-year deferred-adjudication community supervision term onto his twelve-year prison sentence, and the court of appeals held that the cumulation order was improper because deferred-adjudication community supervision is not a "conviction" for purposes of article 42.08 and subsection 3.03(a). *See Beedy*, 250 S.W.3d at 109. Before the Court of Criminal Appeals, the State did not challenge the cumulation order's impropriety but asserted that the error should be remedied by remanding the case to the trial court for resentencing. *Id.* The Court of

24

Criminal Appeals disagreed and held that deletion of the cumulation order was proper because an unlawful cumulation order does not constitute reversible error. *Id.* at 108.[8]

Notably, the cumulation order in *Beedy* involved two sentences and, as a result, could only be unlawful (and deleted) in its entirety. In the present cases, we have concluded that the trial court erred only in part by cumulating the sentences for Morales's chapter 481 offenses. The court did not err by stacking the sentence for attempted tampering onto those concurrent sentences. In the absence of a plea bargain, the remedy for a trial court's partially unlawful cumulation order is provided by the Court of Criminal Appeals' decision in *Sullivan v. State*, in which the court held that "[w]hen part of a cumulation order is illegal," and the trial court's intent is clear from its oral pronouncement, "the remedy is to delete the illegal portion." 387 S.W.3d 649, 653 (Tex. Crim. App. 2013).

It is clear from the record in these cases that the trial court intended for all four of Morales's sentences to run consecutively. Consequently, because the cumulation order was unlawful only with respect to the cumulation of his sentences for the chapter 481 offenses, we need only delete that portion of the order and modify the judgments accordingly. The cumulation order in each of the judgments is ordered to read as follows:

---

[8] In rejecting remand as a remedy, the Court of Criminal Appeals noted: (1) it had "always remedied an unlawful cumulation order by reforming the trial court's judgment to delete the unlawful order," rather than reversing, and that legislative action signaled the Legislature's approval of the practice; (2) on remand for resentencing, the defendant could simply elect to have a jury assess punishment, thereby preventing the trial court from having the opportunity to correct its mistake and attempt to effectuate its original intent to the closest extent; and (3) deletion served the interests of judicial economy by efficiently removing the illegality from the judgment while leaving the lawful remainder intact. *See Beedy v. State*, 250 S.W.3d 107, 113–14 (Tex. Crim. App. 2008); *Morris v. State*, 301 S.W.3d 281, 295 n.51 (Tex. Crim. App. 2009).

The sentences of forty (40) years imposed in trial court cause numbers CR2024-068B, CR2024-069B, and CR2023-623B before the 207th Judicial District Court of Comal County, Texas, shall begin immediately and shall run concurrently. The sentence of forty (40) years imposed in trial court cause number CR2023-624B before the 207th Judicial District Court of Comal County, Texas, is cumulated with and stacked upon the sentences of forty (40) years imposed in trial court cause numbers CR2024-068B, CR2024-069B, and CR2023-623B and shall begin when the sentences in trial court cause numbers CR2024-068B, CR2024-069B, and CR2023-623B have ceased to operate.

*See id.*; *see also* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

## II. Enhancement in Trial Court Cause Number CR2023-624B

In his second issue, Morales contends that his sentence for attempted tampering was "improperly enhanced" under both subsections 12.35(c) and 12.42(d) of the Penal Code "to an impermissible range of punishment" and that because attempted tampering is a state jail felony, it could be enhanced under only subsection 12.425(c). *See* Tex. Penal Code §§ 12.35(c), .42(d), .425(c). The State responds that the Court of Criminal Appeals held in *State v. Kahookele* that sentences enhanced under both subsections 12.35(c) and 12.42(d) are permissible. *See* 640 S.W.3d 221, 223 (Tex. Crim. App. 2021) (*Kahookele* II). In his reply brief, Morales in turn argues that although "*Kahookele* is binding precedent, . . . [it] was wrongly decided."

As in *Kahookele* II, the outcome of these cases is "governed by the meaning and interplay of three statutes: §§ 12.35, 12.42, and 12.425 of the Penal Code." *Id.* The State charged Morales with attempted tampering with physical evidence, a state jail felony. *See* Tex. Penal Code §§ 15.01 (providing that attempted offenses are one category of offense lower than offense attempted), 37.09(c) (classifying tampering with physical evidence, absent inapplicable provisions, as third-degree felony). The charge was enhanced by a prior conviction for aggravated

assault with a deadly weapon, to which Morales pleaded true, making the charge of attempted tampering punishable as a third-degree felony. *See id.* § 12.35(c). The charge was further enhanced by prior nonsequential felony convictions for possession of a prohibited item in a correctional facility, possession of a controlled substance with intent to deliver, and a second conviction for aggravated assault with a deadly weapon—to all three of which Morales also pleaded true—allowing the trial court to punish him as a habitual offender to imprisonment "for any term of not more than 99 years or less than 25 years." *See id.* § 12.42(d).

Section 12.35 creates a two-tiered system of "ordinary" state jail felonies and "aggravated" state jail felonies.[9] *See Reece v. State*, 670 S.W.3d 353, 357 (Tex. App.—Texarkana 2023, no pet.). Subsection 12.35(a) provides that "ordinary" state jail felonies "shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days," Tex. Penal Code § 12.35(a); as alleged here, subsection 12.35(c) authorizes the enhancement of an ordinary state jail felony to an "aggravated" state jail felony, punishable as a third-degree felony, if the offender has previously been finally convicted of a felony for which the judgment contains an affirmative deadly-weapon finding, *id.* § 12.35(c)(2)(B). The distinction between ordinary and aggravated state jail felonies "affects how they can be enhanced for punishment." *Reece*, 670 S.W.3d at 357.

Section 12.425, in turn, contains two provisions for enhancing ordinary state jail felonies and one provision for enhancing aggravated state jail felonies. Subsection (c), relevant here, permits an aggravated state jail felony to be enhanced to the punishment range for a

---

[9] We adopt the "ordinary"/"aggravated" terminology employed in *State v. Kahookele*, 640 S.W.3d 221, 223 (Tex. Crim. App. 2021).

second-degree felony if the defendant has a previous conviction for a felony other than an ordinary state jail felony:

> If it is shown on the trial of a state jail felony for which punishment may be enhanced under Section 12.35(c) that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree.

Tex. Penal Code § 12.425(c); *see Kahookele* II, 640 S.W.3d at 224.

Finally, subsection 12.42(d) "says that an offender convicted of a felony other than an ordinary SJF who has two previous, sequential convictions for felonies other than ordinary SJFs is subject to a punishment range of 25 to 99 years or life in prison." *Kahookele* II, 640 S.W.3d at 224. In relevant part, the statutory text reads:

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. A previous conviction for a state jail felony punishable under Section 12.35(a) may not be used for enhancement purposes under this subsection.

Tex. Penal Code § 12.42(d).

In *Kahookele* II, the Court of Criminal Appeals addressed whether an ordinary state jail felony enhanced to an aggravated state jail felony under subsection 12.35(c) could also be enhanced under subsection 12.42(d). 640 S.W.3d at 224. The appellant in *Kahookele* II made the exact argument that Morales makes now, namely, "that § 12.42(d) does not apply to aggravated [state jail felonies] and that § 12.425 exclusively applies to them." *See id.* Affirming a decision from this Court, *see State v. Kahookele*, 604 S.W.3d 200, 212 (Tex. App.—Austin 2020)

(*Kahookele* I), *aff'd*, 640 S.W.3d at 227, the Court of Criminal Appeals held that an ordinary state jail felony could be enhanced under both subsections 12.35(c) and 12.42(d), such that a defendant charged with an ordinary state jail felony enhanced under both provisions could be punished as a habitual offender, *Kahookele* II, 640 S.W.3d at 224.

In explaining its decision, the court noted that although subsections 12.425(c) and 12.42(d) are *in pari materia* because they both concern felony enhancements, they are "neither ambiguous nor in conflict, and their plain language supports § 12.42(d)'s application to aggravated [state jail felonies]." *Id.* at 225–26. Specifically, the court emphasized that subsection 12.42(d) "only excepts ordinary [state jail felonies] from its ambit. If the Legislature had wanted to except all [state jail felonies,] . . . then it would have done so." *Id.* at 226. The exclusion of ordinary state jail felonies from subsection 12.42(d)'s reach, the court reasoned, "indicates the inclusion of aggravated [state jail felonies]" so that the statute "by implication speaks to the enhancement of [state jail felonies], but only aggravated ones." *Id.* at 227. Thus, as it currently reads, subsection 12.42(d) "means that an aggravated state jail felon with a greater history of convictions for felonies other than ordinary [state jail felonies] may be subjected to a higher range of punishment than an aggravated state jail felon with a lesser history of such convictions." *Id.* Such an interpretation is "a sensible result and not an absurd one, especially when examined in the context of the entire [state jail felony] punishment scheme." *Id.* at 226.

Morales directs us to a decision from our sister court, *Henderson v. State*, which he asserts supports his understanding of the statutory scheme and demonstrates the error of the Court of Criminal Appeals' decision in *Kahookele* II. *See* 582 S.W.3d 349, 355 (Tex. App.—Amarillo 2018, pet. ref'd). However, "[a]s an intermediate appellate court, we lack the authority to overrule an opinion of the court of criminal appeals"; it is "the prerogative of the court of criminal appeals

alone to overrule its interpretation of a statute." *State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006), *aff'd sub nom. State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007); *see Demond v. State*, 452 S.W.3d 435, 460 (Tex. App.—Austin 2014, pet. ref'd) (explaining that "we are bound to conform our opinions to those of the court of criminal appeals"). Unless the court decides to revisit its holding in *Kahookele* II, that decision "is the law and we are not free to disregard it." *DeLay*, 208 S.W.3d at 607. Because Morales's sentence for attempted tampering was properly enhanced, we overrule his second issue.

## CONCLUSION

Having sustained Morales's first issue and overruled his second and third issues and having modified his judgments of conviction as discussed in our resolution of his first issue, we affirm the trial court's judgments as modified.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Modified and, as Modified, Affirmed

Filed: May 14, 2026

Publish

30